KANE *et al.*, Appellants, v. THE KANSAS CITY, FORT SCOTT & MEMPHIS RAILWAY COMPANY.

Division One, October 31, 1892.

1. **Ejectment:** LAND TITLE. In ejectment, plaintiffs claimed title under an administrator's sale of land for the payment of debts of a

decedent; defendant claimed under prior condemnation proceedings against the heirs of the same decedent. *Held,* that the latter title should prevail.

2. ———: "OWNERS:" STATUTE. Upon the death of a land-owner, intestate, his heirs become the "owners" of his title within the meaning of section 2734, Revised Statutes, 1889.

3. Statutes: RULES OF CONSTRUCTION. Laws must be construed so as to harmonize if possible; but, where two interfere, that should be followed which is recommended by the most beneficial reasons.

4. ———: ———. The consequences of a proposed interpretation may be considered in determining probable intention in the enactment of the law.

5. ———: ———. Occasionally the letter of a statute must be narrowed to conform to its evident intent.

*Appeal from Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Haseltine Bros.* and *B. R. Brewer* for appellants.

(1) The deed from the administrator to Michael Kane carried with it all the right, title and interest in and to the land in question, that Gabriel Shackelford had at the time of his death. Revised Statutes of 1889, ch. 1, art. 8, sec. 171. The order of sale of the land was valid. *Van Bibber v. Julian,* 81 Mo. 618. This case establishes the validity of plaintiff's title. It was prior to any rights that defendant may have had by condemnation proceedings. (2) The proceedings had by defendant to condemn the land were invalid under section 2737, Revised Statutes, 1889. Because the damages were not separately assessed to the different owners; and besides the parties proceeded against had no interest in the land sought to be condemned, and said proceedings were not against these plaintiffs, nor those under whom they claim. Statements if any.

made by Julian, the administrator, who was not a party to the proceedings, could not bind these plaintiffs, who. had no notice of such statements if any were made.

*Wallace Pratt* and *J. C. Cravens* for respondent.

(1) The condemnation proceedings were entirely effective to vest in defendant all the right, title and estate which G. P. Shackelford, deceased, had in the strip in controversy at the time of his death. His. heirs were proper parties, and the only necessary parties. to that proceeding. The title was fully vested in them, and any attempt on part of railroad company to invoke. the exercise of the right of eminent domain against anybody but those heirs would have been nugatory and. void. Lewis on Eminent Domain, secs. 320, 324, 325; *Boonville v. Ormrod's Adm'r*, 26 Mo. 193; *Boynton v. Railroad*, 4 Cush. 467; *Swinney v. Railroad*, 97 Ind. 586; *Watson v. Railroad*, 47 N. Y. 157. (2) The land having been appropriated and occupied by the defendant as its right of way and for its tracks and roadbed, long prior to the commencement of this suit, and long prior to said administration sale, and with the full knowledge of Kane at the time he purchased, the plaintiffs, as his heirs, cannot in any event maintain this action. *Baker v. Railroad*, 57 Mo. 265; *Provolt v. Railroad*, 57 Mo. 256; *Gray v. Railroad*, 81 Mo. 132; *McClellan v. Railroad*, 103 Mo. 295. (3) It follows, therefore, that the instruction to the jury to find the issues for the defendant was properly given, and that the judgment should be affirmed.

BARCLAY, J.—This is an action of ejection for a strip of land used by defendant for railroad purposes in Greene county. The judgment of the trial court, was in favor of defendant. Plaintiffs appealed.

The facts lie within a narrow compass, and are all admitted.

The conflicting titles trace to Gabriel P. Shackelford as the common source.

Plaintiffs are the widow and heirs of Michael Kane, deceased, who, in his lifetime, bought a piece of land (including that in dispute) at a sale by Shackelford's administrator to pay debts of that estate. This sale occurred in 1884 and was duly perfected by deed to Mr. Kane. Its regularity is not questioned.

The order for the sale had been made by the probate court in 1879, but its execution was delayed by an appeal reported as *Van Bibber v. Julian* (1884), 81 Mo. 618.

Defendant claims title under proceedings to condemn the strip in question for public use as part of defendant's railway. These proceedings were taken and concluded in 1881 in the circuit court of Greene county. All the heirs of Shackelford were by name made individually parties defendant therein, were duly notified, and substantial damages, assessed by the commissioners, were paid into court for them.

No objection is urged to the formal sufficiency of the condemnation. Plaintiffs' contention is that the deed of the administrator, in 1884, conveyed to Mr. Kane "all the right, title and interest which the deceased [Shackelford] had in such real estate at the time of his death," as declared in section 171, Revised Statutes, 1889 (same as sec. 172 of 1879), notwithstanding the proceedings against the heirs of Mr. Shackelford, in 1881. The effect of these proceedings constitutes the vital issue in this appeal.

The statute regulating them contemplates that each known owner of land sought to be taken shall be made a party; and, among other specific directions on that point, declares that "it shall not be necessary to make

any persons party defendant in respect to their owner-
ship, unless they are either in actual possession of the
premises to be affected, claiming title, or have a title to
the premises appearing of record upon the proper
records of the county.'' Revised Statutes, 1889, sec.
2734, same as sec. 892 of 1879.

Upon the death of Mr. Shackelford, intestate, his
lands descended to his heirs who became the legal
owners thereof. The title was subject to a liability to
respond, in certain circumstances, for the debts of their
ancestor; but, meanwhile, it was vested in the heirs.
As owners they were the proper parties to the con-
demnation case by the terms of the statute. The
administrator did not hold the legal title. *Boynton v.
Railroad* (1849), 4 Cush. 467.

As to the rights of creditors, or of the adminis-
trator of Mr. Shackelford, to reach the fund awarded
as damages, or to interpose in the condemnation case
for their protection the facts before us do not require
any expression of our opinion. The only question in
hand is whether the legal title to the land was effect-
ually reached by the proceedings against the Shackel-
ford heirs.

The privilege of creditors of the estate to resort to
the land and to subject the title of the heirs to debts of
Shackelford certainly does not bring them as near to
ownership as is a creditor who has obtained a definite lien
upon realty by a judgment against its owner; yet one
having such an interest was held not a necessary party
in an action of this nature in New York, where the
law (as with us) required the ''owner'' to be brought in.
*Watson v. Railroad* (1872), 47 N. Y. 157.

Under a similar provision it was held in Iowa that
the rights of a grantee, by unrecorded deed, were con-
cluded by such proceedings against the person holding
the ostensible title of record. *Wilson v. Hathaway*

(1875), 42 Iowa, 173.   Compare *Whiting v. New Haven* (1877), 45 Conn. 303.

The language of section 171, first quoted, cannot be accorded its full, literal meaning, as applied to the facts here in judgment, without antagonizing the terms and objects of other provisions of our statute law mentioned (section 2734).   Yet these laws should be so construed as to give reasonable effect to both if possible.

Without a clearer indication of such a purpose than here appears, it is not to be intended or supposed that the legislature designed to preclude all proceedings to assert the sovereign power of eminent domain during the administration of the estate of a decedent.   Yet that result would follow were plaintiffs' contention sanctioned.

It is a recognized rule of rational interpretation of laws that, where two interfere in their application to particular facts, we should follow that which is recommended by the most beneficial reasons.   Rutherforth's Institutes [2 Am. Ed.] p. 432.

To hold that the statute for the taking of land for public uses could not be invoked while an estate was in process of administration, because of the terms of section 171, would discard that rule of interpretation. The operation of the condemnation act is beneficial and of general public utility.   It should not be defeated by ascribing to section 171 an unjust and unreasonable effect which we think it was plainly never intended to have.   It is proper to inquire into the consequences of any proposed interpretation of a law in determining what was the probable intention in its enactment. Rutherforth's Institutes [2 Am. Ed.] pp. 414, 427.

That the letter of a statute must occasionally be cut down to conform to its evident spirit and intent is a maxim of interpretation which is not new in Missouri.

It has been acted upon by this court in many instances, of which we need only cite as illustrations *Hobein v. Murphy* (1855), 20 Mo. 448, and *Walton v. Harris* (1881), 73 Mo. 441.

The present section 171 originated at a much earlier date, in the history of legislation in Missouri, than did the section 2734, but it has not seemed necessary to consider how far the latter operated to repeal the former by implication on that account. We have treated the sections as entirely synchronal.

We conclude that the condemnation proceedings against the Shackelford heirs vested the title in the railway company, and that the subsequent administrator's sale to Mr. Kane did not divest it. The circuit court so held. Its judgment is affirmed. Chief Justice SHERWOOD, BLACK and BRACE, JJ., concur.