BRUCE ROPER v. LOUIS GREENSPON, Adminis-
trator of Estate of ROSE GREENSPON, JACOB
GREENSPON, ABRAHAM GREENSPON and
LOUIS GREENSPON, Composing Firm of JO-
SEPH GREENSPON & SONS, Appellants.

In Banc, December 1, 1917.

1. **NEGLIGENCE: Speed Ordinance: Invalidity: Pleading.** Where de-
fendant pleads and relies upon a certain ordinance as a defense to
plaintiff's charge of negligence, the invalidity of said ordinance
should be pleaded, and if not pleaded it cannot be excluded as evi-
dence on the ground that it is invalid.

2. ————: ————: **Invalidity Raised at First Opportunity: Waiver.**
The invalidity of an ordinance, relied upon by defendant as a
defense to plaintiff's action for negligence, like the unconstitutional-
ity of a statute, should be raised at the first open door in the course
of orderly procedure in the case, and if not so raised its invalidity
is waived; and the ordinance being pleaded as a defense in the an-
swer, the first opportunity for asserting its invalidity in this case
was by an averment in the reply.

3. ————: ————: **Conflict With State Statute: Waiver.** If the answer
pleads that plaintiff was guilty of contributory negligence in run-
ning his taxicab in excess of a certain speed ordinance pleaded,
and plaintiff replies that the ordinance was in force and that he
was not driving in excess of its speed rates, the court is not re-
quired to decide that said ordinance conflicts with a state statute
on the same subject, neither can said ordinance be excluded from
evidence on any such ground.

4. ———: ———: **Exclusion Harmless Error.** If the ordinance fixed a maximum speed of ten miles per hour and there was evidence that plaintiff's taxicab at the time of his injury was being driven by him at the rate of twenty-five or thirty-five miles, and the instruction made ordinary care the measure of plaintiff's duty, it was not harmless but prejudicial error to exclude said ordinance as evidence; for a rate in excess of the ordinance rate was negligence *per se*, and a rate in excess of that speed was contributory negligence and defeated plaintiff's right to recover, and without such ordinance the jury might find that a rate of even thirty-five miles per hour was ordinary care.

5. **AUTOMOBILE SPEED: Power of City to Regulate.** The Act of 1911 did not expressly or by intendment withdraw from cities the power to regulate the speed of automobiles upon their streets, nor does such act deprive cities of their power to enact valid ordinances providing reasonable speed and other regulations in the use of streets by automobiles.

6. **ORDINANCE NEGLIGENCE: Unlighted Wagon.** Where defendant's long-reach wagon, loaded with long steel beams, extending some eight feet beyond the hind axle, stalled at the intersection of two streets after nine o'clock at night, they were guilty of ordinance negligence for failure to have lights on the wagon, in obedience to an ordinance requiring all such vehicles, while in use upon the streets between the hours of sunset and sunrise, to "display one or more lights or lanterns on the outside of such vehicles, visible from front and rear," and are liable to the driver of an automobile who saw the wagon, but did not see the steel beams, with which he came in contact, and which were of the same color as the asphalt pavement—unless his right to recover is barred by his contributory negligence in driving at an excessive speed.

7. **COMMON LAW NEGLIGENCE: Blocking Street.** Evidence that a long-reach wagon, loaded with long steel beams, extending some eight feet beyond the hind axle, stalled after nine o'clock at night at the poorly-lighted intersection of two streets; that it sunk down into the asphalt pavement and remained there for thirty minutes or more; that the street which crossed the one in which it was traveling was a continuously used highway; that the wagon and beams blocked the whole of the south side of that highway, which was the side used by automobiles going east, as plaintiff's was; that neither the owners of the wagon nor their servants did anything in the way of performing their duty to the traveling public by way of warning or signals, and that plaintiff's taxicab collided with the steel beams and he was injured, is such evidence of common law negligence as entitled plaintiff to go to the jury on that issue.

8. **CONTRIBUTORY NEGLIGENCE:** Question for the Jury. Where there is conflicting evidence on every vital question touching the negligence of plaintiff, the question of his contributory negligence is an issue for determination by the jury; and notwithstanding the evidence on that question preponderates in favor of defendants, the appellate court cannot declare as a matter of law that plaintiff was guilty of such contributory negligence as bars a recovery, even though all the testimony except his own, which is positively to the contrary, shows recklessness on his part at the time of the accident.

Appeal from St. Louis City Circuit Court.—*Hon. William N. Kinsey*, Judge.

REVERSED AND REMANDED.

*Jones, Hocker, Sullivan & Angert* and *Vincent L. Boisaubin* for appellant.

(1) The facts in this case show that plaintiff was guilty of contributory negligence as a matter of law, and therefore the court erred in refusing to give defendants' instruction in the nature of a demurrer to the evidence at the close of plaintiff's case and again at the close of the entire case. Solomon v. Duncan, 185 S. W. (Mo. App.) 1141; Lorenz v. Tisdale, 127 N. Y. App. Div. 433; Rebillard v. Railroad, 216 Fed. 503; Const. Co. v. White, 130 Tenn. 520; Ry. Co. v. Vangilder, 132 Tenn. 487; Lauson v. Fond du Lac, 141 Wis. 57; McDonald v. Yoder, 80 Kan. 25; Bucholtz v. Radcliffe, 129 Iowa, 28; Wallower v. Webb City, 171 Mo. App. 214. (2) The court erred in refusing to admit in evidence the speed ordinance pleaded in defendants' answer and offered in evidence in support of the defense. Said ordinance was not in conflict with the state statute and is valid. The court erred in refusing defendants' instruction submitting the city speed ordinance to the jury and instructing the jury that if they found a violation of said ordinance and that such violation contributed to the injuries plaintiff could not recover. The state statute did not attempt to regulate the speed of automobiles; it did not attempt to fix any speed limit upon au-

tomobiles; it was silent on that upon which the city ordinance spoke; it did not expressly repeal the city ordinance regulating and fixing speed. The statute and the ordinance are, therefore, not in conflict, and the ordinance is valid. Laws 1911, p. 322; St. Louis v. Williams, 235 Mo. 518; St. Louis v. Klausmeier, 213 Mo. 126; St. Louis v. Ameln, 235 Mo. 682; St. Louis v. De Lassus, 205 Mo. 578; State v. Clarke, 54 Mo. 17; St. Louis v. Cafferata, 24 Mo. 94; People v. Bell, 148 N. Y. Supp. 753; Chicago v. Ice Cream Co., 252 Ill. 311; 2 Dillon on Mun. Corp., sec. 632; St. Louis v. Bernard, 249 Mo. 51; Brazier v. Philadelphia, 215 Pa. St. 297; Christensen v. Tate, 128 N. W. (Neb.) 622; Bellingham v. Cissna, 44 Wash. 397.

*Sidney Thorne Able* for respondent.

(1) Plaintiff was not guilty of negligence. Baker v. Fall River, 187 Mass. 53; Corcoran v. New York, 188 N. Y. 131; Carradine v. Ford, 187 S. W. 291; Strauchon v. Railway, 232 Mo. 587; Bluedorn v. Railway, 108 Mo. 488. On the issue of contributory negligence, plaintiff is entitled to the full force of all uncontroverted facts, and to all his controverted evidence, and to every reasonable and favorable construction and inference deducible from all the evidence. Peterson v. Railroad, 265 Mo. 462; Tabler v. Railway, 93 Mo. 79; Buesching v. Gaslight Co., 73 Mo. 231. Unless the only conclusion that can reasonably be drawn from the evidence is that plaintiff was guilty of contributory negligence—only when there can reasonably be no two opinions on the subject, should a demurrer to the evidence be sustained. Campbell v. Railway, 175 Mo. 161; Buesching v. Gaslight Co., 73 Mo. 233. Where there is a flagrant violation of a law or municipal regulation, resulting in an injury, contributory negligence should be clearly made out before the court relieves the defendant upon that ground. Bluedorn v. Railway, 108 Mo. 437; Coffee v. Carthage, 186 Mo. 573; Towler v. Sedalia, 77 Mo. 443. The law will not concern itself over closely in scruti-

nizing and gauging the judgment of men facing confusing perils. Wilson v. Railroad, 169 Mo. App. 405; Corcoran v. New York, 188 N. Y. 140; Underwood v. Railway, 190 Mo. App. 418. (2) The trial court did not err in refusing to admit in evidence the so-called speed ordinance of St. Louis, as the Motor Vehicle Act is "exclusively controlling" on the regulation of the speed of motor vehicles on the public highways throughout the State. The court did not err in refusing defendant's instruction based upon the ordinance. The State, by the express words used in the act, exercised its prerogative and made the Motor Vehicle Act the exclusive law on this subject in Missouri. Ewing v. Hoblitzelle, 85 Mo. 64; Ferrenbach v. Turner, 86 Mo. 419; Building Assn. v. Telephone Co., 33 Mo. 267; Marie v. Transit Co., 116 Mo. App. 22; St. Louis v. Klausmeier, 212 Mo. 127; St. Louis v. Meyer, 185 Mo. 583; 17 Cyc. 871-872; Byrne v. Drain, 60 Pac. 433; 36 Cyc. 1114 and 1115; State v. Kessels, 120 Mo. App. 233; Peterson v. Railroad, 265 Mo. 462; State v. Yardley, 95 Tenn. 546; Smith on Municipal Corporations, sec. 544; People v. Hayes, 66 Misc. (N.Y.) 608; Buffalo v. Lewis, 192 N:Y. 193; Frisbie v. Columbus, 80 Ohio St. 686; Helena v. Dunlap, 102 Ark. 131; Christensen v. Tate, 128 N.W. (Neb.) 622; Ex parte Smith, 146 Pac. 82; St. Louis v. Packing Co., 141 Mo. 375; State v. Jaeger, 63 Mo. 405; Brazier v. Philadelphia, 215 Pa. St. 297; Bellingham v. Cissna, 44 Wash. 397.

GRAVES, C. J.—This case reaches us upon a certification by the St. Louis Court of Appeals. Lengthy opinions upon both sides of the conceived vital questions appear.

The action is one for personal injuries, alleged to have been occasioned by the negligence of defendants. The petition counts upon both ordinance and common law negligence, in this language: "Plaintiff for his cause of action states that on or about the fourteenth of July, 1912, at about nine-forty-five p. m., between sunset and sunrise, plaintiff being then and there a chauffeur in the employ of

Roper v. Greenspon.

and driving a taxicab for the St. Louis Taxicab Company, drove in an easterly direction along the right or south side of Lawton Avenue to Channing Avenue, both being public highways in a residence section of the city of St. Louis, Missouri; that the defendants were at the aforesaid time the owners of a wagon, loaded with heavy steel 'I' beams which extended eight or ten feet behind the rear of the wagon, and two horses, in the possession of a driver, the servant and employee of the defendants, who was then and there in charge of same for defendants, which wagon and team were at the time aforesaid facing north on Channing Avenue at the intersection of Lawton Avenue, standing across and blocking Lawton Avenue; that there was no light or lantern displayed on the outside of said wagon; that at said time tnere was in force a certain ordinance of the city of St. Louis, Missouri, providing that:

" 'On every hackney carriage, cab or cabriolet, when driven upon the streets between the hours of sunset and sunrise, shall have fixed on some conspicuous part of the outer side thereof, two lighted lamps, with plain glass fronts and sides, on which shall be painted in legible figures, at least one inch long, the registry number thereof. Every automobile, when upon any public street, shall carry between the hours of sunset and sunrise at least two lighted lamps showing white lights visible at least two hundred feet in the direction toward which the automobile is proceeding, and shall also exhibit at least one red light visible in the reverse direction. All other vehicles while in use upon the streets between the hours of sunset and sunrise, shall display one or more lights or lanterns on the outside of such vehicles, visible from front and rear,'

being Section No. 1349; that on account of the negligence of defendants, their servant and employee in failing to observe the requirements of said ordinance and in failing to display a light or lantern on outside of said wagon at aforesaid time, being between the hours of sunset and sunrise, plaintiff driving taxicab east on right or south side of Lawton Avenue, as aforesaid, exercising due care for his own safety, was unable to see said unlighted wag-

on loaded with heavy steel 'I' beams, drove into and against the ends of the heavy steel 'I' beams, which extended eight or ten feet from the rear of said wagon, injuring himself as hereinafter stated.

"Plaintiff further states that the defendants, their servant and employee, carelessly and negligently allowed the said wagon, loaded with heavy steel 'I' beams, which extended eight or ten feet behind the wagon, to come to a standstill on Channing Avenue across Lawton Avenue, a much used public highway, on a dark night at aforesaid time, carelessly and negligently permitting it to remain there for thirty minutes or more while driver, a servant and employee of defendants, of said wagon owned and about the business of defendants at said time, unhitched the team from the wagon, argued the advisability of trading teams with another driver, a servant and employee of defendants driving another wagon for said defendants at said time near said place, and re-hitched same team to said wagon, without giving any signal or warning to approaching vehicle driven by plaintiff and without displaying a light on the heavy steel 'I' beams which extended eight or ten feet from the rear of the wagon and in the path of east-bound traffic on Lawton Avenue; each and all of which acts and omissions on the part of defendants, its servants and employees, proximately and directly contributed to the aforesaid accident and injuries resulting therefrom to plaintiff hereinafter stated.

"Plaintiff further states that said driver, a servant and employee of defendants, was not a fit or proper person to be intrusted with the said team and wagon of defendants, loaded with heavy steel 'I' beams which extended eight or ten feet from the rear of said wagon, all of which was known by defendants or by the exercise of due and proper care might have been known to the defendants prior to the fourteenth day of July, 1912."

The answer is (1) a general denial and (2) contributory negligence. The plea of contributory negligence was divided into two parts, i.e. (1) acts of the plaintiff other than the alleged violation of a city ordinance and (2) the violation of the following city ordinance: "No automobile, motor vehicle, locomobile or horseless ve-

hicle propelled by the use of electricity, gasoline or steam, by whatever name such vehicle may be known, whether used for purposes of pleasure or business, shall be moved or propelled along, over or upon any public street, avenue, boulevard or other public place, at a greater rate of speed than is reasonable, having regard to the traffic and use of such street, avenue, boulevard or public place; or so to endanger the life or limb of any person, or the safety of any property, and shall not in any event, while upon any such street, avenue, boulevard or public place, be moved or propelled at a greater rate of speed than eight miles per hour in the business portions of the city, and not greater than ten miles per hour in the other portions thereof; and when turning a corner of intersecting streets, avenues, boulevards, or public places, or when traversing a curve or turn in a street, avenue, boulevard or public place where the view is obstructed, the rate of speed shall not be greater than six miles per hour. The term and words 'business portions of the city' as used in this ordinance shall be construed to mean the territory of the city contiguous to a street, avenue, boulevard or public place, which is at a particular point principally built up with structures devoted to business.''

The reply placed in issue all the new matters in the answer. Upon a trial before a jury plaintiff had a verdict for $3000, and from a judgment thereon defendant appealed to the St. Louis Court of Appeals, and the case is now here in the manner above stated. Points made and the evidence bearing thereon will be left to the opinion.

I.    In the trial of the case the defendant offered in evidence the ordinance as to speed pleaded in the answer, and the court excluded such ordinance, to which action exceptions were well preserved. The defendant further preserved the point by asking an instruction based upon the ordinance, which the court refused, and an exception was duly saved to this action. As we gather it from the record the

Ordinance as Evidence.

Roper v. Greenspon.

trial court was of the opinion that this ordinance was in conflict with the statutes of the State. The reply had not pleaded the invalidity of the ordinance, but denied that plaintiff had violated it in the running of his taxicab.

We think there was error in the exclusion of this ordinance, and for two reasons, (1) because the ordinance conflicts with no state statute, and (2) because the validity of the ordinance was not challenged in the reply, although the ordinance had been pleaded in *haec verba* in the answer.

It is true that an ordinance of a city which conflicts with a state statute is void, but if a party is relying upon that fact, such invalidity should be pleaded, where it appears, as here, that the adverse party had pleaded and is relying upon such alleged invalid ordinance. The invalidity of a statute or ordinance should be raised at the first opportune moment, and in this case that opportune moment was the reply. But this reply in this case proceeds upon the theory that the ordinance is valid, and specifically denies that plaintiff was driving "at a rate of speed greatly in excess of and in violation of an ordinance of the city of St. Louis, Missouri, at said time in force, and know as Section 1551." From this it appears that the plaintiff, not only did not plead the invalidity, but on the contrary in his reply avers that said ordinance was "at said time in force." This amounts to a waiver of the alleged invalidity of the ordinance, and it comes too late, when it is urged for the first time when the ordinance is offered in evidence. We take it that the invalidity of an ordinance, like the unconstitutionality of a law, must be brought in at the first open door under the orderly procedure in the case. [Lohmeyer v. St. Louis Cordage Company, 214 Mo. 685.] If the cause of action be founded upon a pleaded ordinance, the answer would be the first open door. If the defense in its answer relies upon a pleaded ordinance, then the reply would be the first open door. So that we conclude, as both opinions of the Court of Appeals conclude, that the invalidity of this ordinance is not in the case.

We do not agree with the minority opinion that its exclusion was harmless error. If this ordinance should have been admitted, as we conclude, then its rejection was potential error. It is true that the plaintiff, testifying in his own behalf, says he was only running six to eight miles per hour, but much testimony shows that he was running at a much greater rate of speed. Some witnesses place his speed at from 25 to 35 miles per hour. The defendant, if this ordinance had been in evidence, would have been entitled to an instruction to the effect that if plaintiff was running his taxicab at a rate of speed in excess of the named rate of speed in the ordinance, then he was guilty of negligence, and that if this particular ordinance negligence contributed to his injury, he could not recover, although the defendants were guilty of negligence. This character of an instruction the defendants asked, but with the ordinance excluded from the case, they were not entitled to it, and it was refused. Had the ordinance been in evidence they would have been entitled to it.

The harmfulness of the refusal of this ordinance and thereby the preclusion of a proper instruction based thereon, is made apparent when we examine the principal instruction given for plaintiff. This instruction made the exercise of "ordinary care" the measure of plaintiff's conduct as he approached the wagon. The term "ordinary care" covered the speed of his taxicab, as well as his other conduct. Excluding this ordinance a jury might find that a speed of 35 miles per hour was the exercise of ordinary care, whilst under the ordinance such rate would not be the exercise of ordinary care, but would be negligence *per se*, and if such negligence contributed to the injury, no liability would follow. The exclusion of this ordinance was not only error, under the issues raised by the pleadings, but was error of the most harmful kind, and for which the judgment will, at least, have to be reversed.

II. Whilst under the pleadings in the case the invalidity of this ordinance is not really a question, yet we

think    the    ordinance    a    valid    one,    and    as    the
question will no doubt come up on a re-
trial    of    the    case    (if    we    conclude    it
should be retried), under an amended re-
ply, we deem it best to discuss the point.

Validity of Automobile Speed Ordinance

In the year 1911, the Legislature revised the automobile laws of the State. [Laws 1911, p. 322, et seq.] These laws cover divers matters with reference to automobiles, and the running thereof, in this State. Section 1 of this act repeals chapter 83, Revised Statutes 1909, and enacts a new chapter to be known as Chapter 83. The second section reads:

"Except as herein otherwise expressly provided, this article shall be exclusively controlling:

"(1) Upon the registration, numbering and regulation of motor vehicles, and the licensing and the regulation of chauffeurs;

"(2) On their use of the public highways, and

"(3) On the accessories used upon motor vehicles and their incidents and the speed of motor vehicles upon the public highways;

"(4) On the punishment for the violation of any of the provisions of this article."

Section 9 of said act reads: "Every person operating a motor vehicle on the public highway of this State shall drive the same in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person: Provided, that a rate of speed in excess of twenty-five miles an hour for a distance of one-half of a mile shall be presumptive evidence of driving at a rate of speed which is not careful and prudent."

The contention of the plaintiff, in effect is, that this Act of 1911 precludes cities from fixing a speed limit. If such is the effect, the sooner it is known the better. When this whole act is read, I do not believe that a speed limit ordinance fixing a rate of less than twenty-five miles per hour conflicts with this state law. The idea that the Legislature designed and intended to preclude

speed limit ordinances absolutely in cities, towns and villages, by this act, is a striking one. The only thing said by the act about speed is that a rate of speed in excess of twenty-five miles per hour for a distance of one-half mile shall be presumptive evidence of driving at a rate of speed which is not careful and prudent. The prior portion provides for prudent driving and a rate of speed so as not to endanger the life or property of another. It will be noted that the last portion of the section only says what shall be presumptive evidence of imprudent driving. The question is, can this section 9, when read in connection with section 2, supra, be held to make all speed ordinances of cities, towns and villages void? Did the Legislature intend to say that an automobile could be driven through the most active street in the great city of St. Louis at twenty-five miles an hour, and the act itself would not be presumptive negligence? Did the Legislature with no practical knowledge of conditions in congested centers, or of the conditions of the streets and highways thereof, intend to preclude the lawmaking bodies of such places from regulating speed of vehicles therein, in the exercise of the police powers? If it did, it is well to know it, to the end that the next Legislature may undo such a vicious act. According to plaintiff's contention, drivers of these machines have practically an unbridled license to run twenty-five miles per hour through the most congested streets of the most populous city in the State, and the municipality, through its legislative body, is utterly helpless. This, because the act itself does not show negligence until a speed in excess of twenty-five miles per hour is reached, and fixes no speed limit whatever.

In my judgment there is nothing in this act which tends to show a legislative intent to withdraw from cities, towns and villages the police power which they now possess, and for years, have possessed, to regulate traffic upon their streets. That prior to this Act of 1911 the city of St. Louis, in the exercise of its police power, theretofore delegated to the city by the State, had the

right to pass and enforce the ordinance in question, there can be no doubt.

Was it the intent of the Legislature, by this Act of 1911, to withdraw from the city the grant of police power theretofore made in this behalf? We think that no such intent can be gathered from the act, when read in its entirety. That the city had the right, under its police power, to pass speed ordinances prior to this act must be conceded, and if there is no intent of the law makers expressed in the Act of 1911 to withdraw this police power, the city still possesses it. All over this State were cities, towns and villages having regulatory ordinances with reference to traffic upon their streets by motor vehicles, and the Legislature knew this fact, and further knew that such ordinances had been enacted and enforced through the police powers granted to such municipalities of the State by the Legislature, and yet we find no language in this Act of 1911 indicating an intent to amend the divers municipal charters, by the withdrawal from such municipalities of the police power, under which they could control their streets in this regard. Before we hold that this police power has been withdrawn from these municipalities of the State, the legislative language will have to be more explicit than that found in this Act of 1911. We hold the ordinance in question a valid one, and that for this reason there was error in refusing to admit it in evidence.

III.    It will be noticed that the plaintiff's petition is predicated both upon ordinance negligence and common-law negligence. Both opinions from the Court of Appeals hold that there was no liability under the facts, growing out of the alleged ordinance negligence. This calls for a short detail of the facts. Defendants were engaged in the iron and steel business. The accident occurred in the night time. Plaintiff was driving his car east on Lawton Avenue, and the collision occurred at the intersection of Lawton Avenue and Channing Avenue. Defendants had a long "reach wagon" loaded with some

Lights on Wagon.

large "I" beams. These beams extended some eight feet
or more beyond the hind axle of the wagon. The evidence
conflicts on how far they extended. They were about
the color of the asphalt street surface below them. The
wagon wheels had cut into the soft asphalt street and the
wagon was stalled there. Another team and wagon of the
defendants with its driver was near. The two drivers
were devising means of extricating the "stalled" wagon,
when the accident occurred. This "stalled" wagon was
across Lawton Avenue in Channing Avenue. The
evidence conflicts as to whether the wagon with its pro-
truding beams was so located as to stop all passage of
automobiles on the south side of Lawton Avenue, the side
to be used by vehicles going east. There is testimony for
the plaintiff to the effect that a vehicle could not pass
between the ends of the iron beams and the curb, or in
other words that the wagon and its protruding beams
blocked the whole south side of Lawton Avenue. Plain-
tiff says that he discovered the wagon before he got to it,
but could not see the beams. That upon seeing the wagon
he veered his machine so as to miss the wagon, and struck
the beams. There is evidence that defendants had no
lights upon the wagon, and that the only lights at this
street intersection on this Sunday night were two single-
burner gas lights situated on diagonal corners of the in-
tersection, which gave very little light upon this place
where the wagon was standing. As stated the evidence
tends to show, from plaintiff's side of the case, that these
iron beams were near the color of the asphalt below them,
and therefore hard to distinguish from it.

The portion of the ordinance, which is applicable to
this wagon, reads: "All other vehicles, while in use upon
the streets between the hours of sunset and sunrise, shall
display one or more lights or lanterns on the outside of
such vehicles, visible from front and rear."

The point made by our brothers of the Court of
Appeals is that a failure to comply with this ordinance,
was not the proximate cause of the injury, for the reason
that plaintiff actually saw the wagon, according to his own
testimony. It is true that he did see the wagon (in dim

outline), as can be inferred from his testimony, yet he says that he did not see the iron beams thereon.. It is also true, as suggested by our brothers, that a lantern placed on the front portion of this load, so as to be visible both from front and rear, would be a compliance with the ordinance, but it does not follow from this that the jury could not conclude, from all the facts, that the absence of this light (even on the front end of the load) was the cause of the injury. Such a light, so located, might have, and no doubt would have, indicated to plaintiff the true character of the load on the wagon. A glance at such beams would or might have indicated to him that they were liable to extend beyond the rear wheel, although it be granted that the light on the front end of the load might not have so lighted the protruding ends of the beams as to make them visible. In other words, this light would have shown the character of the load on the wagon, and with a knowledge that the wagon was so loaded, might-have indicated to plaintiff that the beams protruded beyond the rear wheels. We think that ordinance was a proper matter for the consideration of the jury under proper instructions. To this extent we agree to neither of the learned opinions from the Court of Appeals. The case, in so far as ordinance negligence is concerned, should go to the jury, unless the plaintiff is barred by his contributory negligence, a question we get to later.

IV. Going now to the common-law neligence. If it be a fact that the intersection was poorly lighted, as there is evidence tending to show; and, if it be a fact

Common Law Negligence.

that this wagon and its load blocked the whole south side of Lawton Avenue, and most of the north side, as there is some evidence tending to show; and, should it further appear that this highway running east and west was being con-tinuously used, and that the travelers to the east used the southern portion of the street, we are not prepared to say that this negligence should not likewise have gone to the jury. True it is that the mere stopping of the wagon under the circumstances was not negligence, nor

was the delay of thirty minutes or more in getting it out, negligence, but if it was dark and the wagon's contents could not be seen, and the wagon and its contents did in fact block the travel of that portion of the avenue, we are inclined to think that the defendants and their agents owed some duty toward the traveling public, by way of warning or signals of some kind. The Court of Appeals in the majority opinion makes no direct ruling contrary to these views, but passes to the question of plaintiff's contributory negligence as a matter of law, and holds that plaintiff was barred by his contributory negligence, and it is largely upon this question that the two opinions differ. The question of contributory negligence we take up next.

V. In the Court of Appeals, as here, the real crux of the case is the alleged contributory negligence of the plaintiff. It was upon this point that the Court of Appeals divided, the majority being of the view that the plaintiff should be declared guilty of contributory negligence as a matter of law. The question is one of fact, and we do not believe that the facts in the record call for a peremptory instruction to find for defendant on the ground of plaintiff's contributory negligence. To do so would require us to ignore as unworthy of belief the testimony of the plaintiff when testifying in his behalf. As we have already indicated, the evidence conflicts as to the speed at which plaintiff was driving. The testimony of the plaintiff, if believed, shows that he was not negligent in this regard. It is true much testimony tends to show his recklessness at the time, but the credibility of all this testimony was for the jury.

It is further true that a witness testified that the protruding beams could be seen for a hundred feet or more, and were so seen that night, but plaintiff testifies that he could not and did not see them. It is further true that the evidence largely predominates to the effect that there was ample room between the ends of these beams and the curb for the safe passage of a

taxicab, and that vehicles did actually so pass whilst the wreck of the collision was there, yet on the other hand one witness for plaintiff, who drove up to the place with a motor car, says that he arrived there whilst the taxicab was yet under the beams, and that the beams extended closer to the curb than the taxicab which had been driven by plaintiff, and that a taxicab could not pass between these beams and the curb. This witness even says that he looked over the situation with the view of driving his car through. So, throughout this testimony upon all vital questions touching the negligence of the plaintiff there is a conflict. It is true that the preponderance is against the plaintiff, but whilst this matter is one of material consideration by the trial court, it is not a question here after verdict and judgment. Without further details of the evidence, it is sufficient to say that there was evidence which would carry the question of contributory negligence to the jury. The conditions as to the character of the light at this crossing at the time is in conflict. In fact, every question upon which might be predicated the negligence of the plaintiff is wrapped up in conflicting evidence. What we might do, if sitting as a jury, is beside the question. The demurrer to the evidence was rightfully overruled, but for the error heretofore pointed out the judgment *nisi* should be reversed, and the cause remanded for a new trial. It is so ordered.

*Walker, Faris, Woodson* and *Williams, JJ.,* concur; *Bond, J.,* concurs in result; *Blair, J.,* concurs in paragraphs 1, 3, 4 and 5 and in result.