CHARLES MCGILL ET AL., RESPONDENTS, v. CITY OF ST. JOSEPH, APPELLANT.*—38 S. W. (2d) 725.

Kansas City Court of Appeals. May 4, 1931.

*Richard M. Duncan* and *Mayer, Conkling & Sprague* for appellant.

*B. M. Lockwood, Alva F. Lindsay* and *Phillip Slattery* for respondents.

CAMPBELL, C.—Plaintiffs were engaged in operating taxicabs for hire upon the streets of St. Joseph, a city of the first class. The city, on June 14, 1929, passed an ordinance which provides that no one shall operate a taxicab for hire upon its streets unless there is affixed thereto a taximeter that will show the fare charged for service, nor operate a taxicab for hire upon its streets without filing with the city treasurer an indemnity bond or policy of liability insurance in the amount specified in the ordinance, and conditioned for the payment of final judgments for personal injury or property damaged.

There are other provisions in the ordinance not necessary here to mention. Plaintiffs, claiming that the cited provisions of said ordinance are unreasonable and void and in derogation of the Motor Vehicle Act, Laws 1921, Extra Session, pages 76-106, brought suit to enjoin defendant from enforcing said ordinance.

The answer is a general denial and an averment that the ordinance was duly passed and became effective June 25, 1929, and that defendant was attempting to enforce the same against persons affected thereby.

The cause was tried resulting in a decree that the said provisions of the ordinance are unreasonable, invalid and in derogation of the Motor Vehicle Act. The defendant appealed.

Plaintiffs' evidence tends to show that they were engaged in operating a number of taxicabs for hire upon defendant's streets; that to install a taximeter would cost per cab about $200 and that the value of the cab would be decreased thereby; that in order to obtain a bond or liability policy it was necessary for them to establish financial responsibility; that underwriters recognize the taxicab business as extremely dangerous and hazardous to the public and for that reason will not write liability insurance on taxicabs unless security is given or the applicant is exceptionally well rated.

Two questions are presented, namely; (1) Is that part of the ordinance unreasonable which provides for the installation of taximeters and the procuring of indemnity bonds or policies of liability insurance? (2) Is the ordinance in derogation of an act of the General Assembly of 1921 relating to motor vehicles? [Pages 76-106 inclusive, Extra Session.]

As to the first of these questions we experience no difficulty.

Plaintiffs proceed upon the theory that they may conduct upon defendant's streets an "extremely dangerous and hazardous" business, one so dangerous to the public that bonds or policies of insurance conditioned that they will pay the damages caused by their wrongful conduct, cannot be obtained.

On this subject the plaintiffs content themselves by saying that the said provisions of the ordinance "are unreasonable and void under the evidence in this case." No authority is cited to support the assertion and we have found none.

The rule is that the courts will not declare an ordinance unreasonable unless "no difference of opinion can exist upon the question. A clear case must be made to authorize the court to interfere on that ground." [Wagner v. St. Louis, 284 Mo. 410, 417, 224 S. W. 413.]

The Supreme Court of the United States in Packard v. Benton, 44 Sup. Ct. R. 257, considered a statute containing quite similar provisions and said:

"The streets belong to the public, and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary, and generally, at least, may be prohibited or conditioned as the Legislature deems proper. . . . It is asserted that the requirements of the statute are so burdensome as to amount to confiscation, and, therefore, to result in depriving appellant of his property without due process of law. . . . The fact that, because of circumstances peculiar to him, appellant was unable to comply with the requirements as to security without assuming a burden greater than that generally borne, or excessive in itself, does not militate against the constitutionality of the statute. Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right, and one carried on by governmental sufferance or permission. In the latter case the power to exclude altogether generally includes the lessor power to condition, and may justify a degree of regulation not admissible in the former."

There are many cases in the books, some of them dealing with a statute and some of them with an ordinance, the provisions of which are substantially the same as the ordinance in question, and all of them hold that said provisions are not unreasonable. [Green v. San Antonia, 178 S. W. 6; State v. Barbalais, 64 Atl. 881; Kent Cab Company v. Louisville, 18 S. W. (2d) 992; Melconian v. Grand Rapids, 188 N. W. 521; Gaddock v. San Antonio, 198 S. W. 634; Dickey v. Davis, 85 S. W. 781; State v. Seattle, 156 Pac. 873; Hazleton v. Atlanta, 87 S. E. 1043; New Orleans v. Le Blanc, 71 So. 248; Huston v. Des Moines, 156 N. W. 883; Commonwealth v. Theberge, 121 N. E. 30; Ex parte Parr, 200 S. W. 404.] Numerous other cases announce the same doctrine. Said provisions are not unreasonable.

It seems to be tacitly conceded that if the ordinance is not unreasonable, and we have determined it is not, defendant would possess the power to pass the same unless deprived thereof by the provisions of the Motor Vehicle Act of 1921.

The Legislature by section 7674, Revised Statutes 1919, delegated police power to defendant.

The ordinance is clearly within that power. City of St. Louis v. Hammond, 199 S. W. 411; Ex parte Louis Lerner, 281 Mo. 18, 25, 218 S. W. 331, authorities supra.]

Plaintiffs contend that the power to pass the ordinance was abrogated by said Motor Vehicle Act.

Defendant argues that the statute was enacted for the purpose of regulating motor vehicles generally in their ordinary use; that the ordinance was passed for the purpose of regulating the business of a common carrier carried on upon its streets; that the statute is silent upon the question of defendant's power to control the use of its streets and to pass other needful ordinances allowed by the terms of its said charter and that silence is not conflict. It has been said: "In order to be a conflict of any kind, two things must of necessity exist, and when it is contended that there is a conflict between two laws both must contain either express or implied provisions which are inconsistent and irreconcilable with each other. If either is silent where the other speaks, there can be no conflict between them." [St. Louis v. Klausmeier, 213 Mo. 119, 127; 112 S. W. 516.]

It cannot be said that the act expressly abrogates the police power of municipalities to "have control and power over the streets." If that result was accomplished it was by implication only. It is well settled "that repeals by implications are not to be favored. . . . In other words, it must not be supposed that the Legislature intended by a later statute to repeal a prior one on the same subject, unless the last statute is so broad in its terms and so clear and explicit in its words as to show that it was intended to cover the whole subject, and, therefore, to displace the prior statute." [State ex inf. v. Amick, 247 Mo. 271, 290, 152 S. W. 591.]

In the case Kane v. Kansas City, 112 Mo. 34, 39, 20 S. W. 532, the court said: "It is a recognized rule of rational interpretation of laws that, where two interfere in their application to particular facts, we should follow that which is recommended by the most beneficial reason. . . . It is proper to inquire into the consequences of any proposed interpretation of a law in determining what was the probable intention in its enactment. . . . That the letter of a statute must occasionally be cut down to conform to its evident spirit and intent is a maxim of interpretation which is not new in Missouri." In the interpretation of laws it is the duty of all courts to ascertain the intention of the lawmaking power. "To gather that intention, the courts are not confined exclusively to the consideration of the immediate statute in question, but may look to other legislation in pari materia." [Manker v. Faulhaber, 94 Mo. 430, 442, 6 S. W. 372.] A statute should not be construed as if it stood alone and complete in itself. [Glaser v. Rothschild,

120 S. W. 1.] And where two statutes are susceptible of a construction that will give force to both, they must be so construed. [State ex rel. v. Clayton, 126 S. W. 506.]

Sec. 2 of the Motor Vehicle Act of 1921, p. 76, provides the act shall be exclusively controlling on . . . regulations, operation . . . of motor vehicles, their use on public highways . . . "and all laws, ordinances, or regulations of municipal corporations or political subdivisions in conflict, inconsistent with, or contrary to the provisions of this act shall be void except as herein otherwise expressly provided."

Section 24 provides that municipalities may, by ordinance, establish speed regulations for motor vehicles, make additional rules of the road, establish one way streets. . . . "No ordinance shall be valid which contains provisions contrary to or in conflict with this act, except as herein provided."

Section 31 provides that all laws inconsistent or in conflict with any of the provisions of the Act are repealed and "this act shall nullify and supersede all ordinances of municipalities contrary to, inconsistent or in conflict with any of the provisions hereof."

Much stress is placed upon the provisions of the act to the effect that all ordinances in conflict, inconsistent with, or contrary thereto shall be void. We do not regard said provisions as controlling the interpretation of the act, because an ordinance which is inconsistent with or contrary to a statute is void regardless of anything the Legislature may say on the subject. The question of conflict is for the courts, not for the Legislature.

By said Section 7674, police power is delegated to the defendant as follows:

Paragraph 7 to regulate and control the use of all rights, franchises and privileges granted by it except where such powers are otherwise conferred by the article;

Paragraph 12 to have control and power over the streets . . . public grounds and highways of the city;

Paragraph 17 to license, tax and regulate . . . automobiles . . . and all vehicles, public and private;

Paragraph 19 to license, tax and regulate . . . chauffeurs, or automobile drivers, . . . and all other persons, . . . pursuing like occupations . . . and to fix and prescribe uniform rates and charges for such service to the public;

Paragraph 38 to pass all ordinances and all rules and police regulations necessary for the good government, peace and order of the city, and trade and commerce thereof;

Paragraph 56 "to pass all needful ordinances for preserving order, securing property and persons from violence, danger or destruction, protecting public and private property, and for promoting the general interest and assuring the good government of such city."

In determining whether the Motor Vehicle Act is in derogation of the policy power of municipalities to regulate a business conducted upon public streets in such a manner as to endanger life and property, we must be mindful that repeals by implication are not to be favored and that we may inquire into the consequence of any proposed interpretation of a law. The consequences that will flow from the interpretation contended for by defendant will be that the municipalities of the state retain control and power over streets, and the power to pass all needful ordinances, etc.

An examination of the charters of towns and cities will disclose a settled legislative policy to delegate to them control and power over streets and the power to pass all needful ordinances, etc.

If the act be construed in accordance with plaintiff's contention, then we must necessarily hold that the Legislature has said that they and others who engage in the same kind of business may use the public streets of the municipality as their only place of business, and conduct thereon the business of common carriers, a business that is dangerous and hazardous to the public, and that defendant is powerless to exercise any other or different regulation over that dangerous agency then it can exercise over an automobile operated upon its street for ordinary purposes.

We do not question the competency of the Legislature to enact a law that would permit common carriers unrestrained use of the streets of municipalities as their only place of business and to conduct thereon a business dangerous to life and property, but before we hold a law does so provide it must be so plain and clear in its terms as to admit of no other reasonable construction.

In the case Roper v. Greenspon, 198 S. W. 1107, the plaintiff contended that the Motor Vehicle Act of 1911, page 322, precluded cities "from regulating speed of vehicles therein, in the exercise of the police powers." The court said, "If it did, it is well to know it, to the end that the next Legislature may undo such a vicious act."

Certainly the Legislature, shortly after the opinion in the Roper case was handed down, would not enact a law, which the highest judicial tribunal in the state had said would be a "vicious act."

Section 2 of the act of 1911 reads:

"Except as herein otherwise expressly provided, this article shall be exclusively controlling:

"(1) Upon the registration, numbering and regulation of motor vehicles, and the licensing and the regulation of chauffeurs;

"(2) On their use of the public highways, and

"(3) On the accessories used upon motor vehicles and their incidences and the speed of motor vehicles upon the public highways;

"(4) On the punishment for the violation of any of the provisions of this article."

The act does not by its terms delegate to municipalities power to regulate the use of motor vehicles except to require a license tax to be paid. Therefore the term "exclusively controlling" is not sufficiently specific to abrogate the police power of municipalities to exercise control of public streets.

The Public Service Commission granted permission to a railway company to construct its tracks across certain streets in Kansas City without having obtained authority from the latter so to do. The commission contended it had exclusive power to grant such permission under the provisions of section 10459, Revised Statutes 1919, which reads:

"1. . . . Nor shall the track of any railroad corporation be constructed across a public road, highway or street at grade . . . without having first secured the permission of the commission. . . . The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.

"2. The commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of . . . a public road or highway by a railroad or street railroad, and of a street by a road or vice versa, as far as applicable, and to alter or abolish any such crossing."

The court held that the commission did not have "exclusive power" to determine and prescribe, etc.; that the act did not abrogate the power of the city to control its streets. Said the court: "Municipalities have always possessed and under our system of laws still retain power to control their streets and roads. The primary right to exercise this power was not abrogated by the enactment of the Public Service Act." [State ex rel. v. Public Service Commission, 301 Mo. 179, 196, 257 S. W. 462.]. By parity of reasoning it cannot be said the Motor Vehicle Act of 1921 abrogated the power of defendant to control its streets.

This holding is supported by later legislative acts. The Motor Bus Act 1927, page 402, delegated to the Public Service Commission, power to regulate motor carriers. Section 2 of the act concludes: "No provisions of this act shall be so construed as to deprive any municipality within the State of its right to control the use of its streets or of the right to regulate all busses operating within its corporate limits."

The provision is a recognition by the law making power that municipalities had not theretofore been deprived of the right to control the use of streets.

Police power was delegated to defendant by section 7674, Revised Statutes 1919. That section was repealed in 1929 and a new section (6171, R. S. 1929) enacted in lieu thereof.

If, as plaintiffs contend, the act of 1921 abrogated the power of defendant to control the use of its streets because it is exclusively controlling, then the enactment of the new law in 1929 would abrogate, partially repeal, the Motor Vehicle Act.

Of course the Legislature did not intend to do such a thing. Both laws may stand, both may be given effect. The judgment below is reversed and the cause remanded, with directions to dismiss the plaintiff's bill.. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is adopted as the opinion of the court. Judgment below is reversed and the cause remanded, with directions to dismiss plaintiff's bill. All concur, except *Trimble, P. J.,* absent.