SHANNON, Judge.
Appellants-plaintiffs filed their complaint asking for declaratory and injunctive relief. The appellee-defendant filed its answer and subsequently plaintiffs filed a motion for summary judgment. On the motion for summary judgment the lower court entered its final decree which is the subject matter of this appeal.
The facts in the case are not in dispute and may be summarized briefly. The plaintiffs are all common carriers holding certificates of public convenience pursuant to provisions of Chapter 323, Florida Statutes, 1957, and have paid and are paying the fees and mileage taxes therein prescribed. By their complaint the plaintiffs alleged that in the usual course of their business it was necessary for them to utilize areas on the city’s streets designated “loading zones” to load and unload their vehicles pursuant to the transportation of freight. The defendant city had passed an ordinance requiring anyone using such zones to apply for a permit to do so and to pay for such permit the sum of $10 for the first year and $1 a year thereafter. The ordinance provided a fine and/or imprisonment for violation of such ordinance. The plaintiffs had not obtained the requisite permit but were nevertheless continuing to use the “loading zones”, and as a result the station managers of the plaintiffs were arrested and required to post bonds. Plaintiffs claimed that the ordinance was in conflict with Chapter 323, Florida Statutes 1957, F.S.A.
*724 The trial court, in denying summary judgment and dismissing the cause, found:
“This cause, coming on for hearing on Plaintiffs’ Motion for Summary Judgment and the Court, having considered the pleadings and affidavits, heard argument of counsel for the respective parties, and finding that there is no material issue of fact and that there is no conflict between Chapter 323 Florida Statutes and the Ordinance of the City of Orlando on Freight Loading Zone Permits, and being advised in the premises, it is
“Ordered, Adjudged and Decreed that Plaintiffs’ Motion for Summary Judgment be and the same is hereby denied, and
“It is further Ordered, Adjudged and Decreed that the cause be and the same is hereby dismissed.
“Done and Ordered in Chambers at Orlando, Florida this 11th day of July, A.D. 1958.”
The Plaintiffs in their appeal pose but one question for us to answer, namely:
“Where it is necessary in the ordinary course of transacting its business for an auto transportation company as defined in chapter 323, Florida Statutes 1955 (now 1957), which company is paying the mileage tax therein provided for, to use the freight loading and unloading zones designated on the streets of a municipality, for the expeditious loading and unloading of freight, can said municipality levy or impose a tax or fee upon such company for the lawful use of said freight zone, notwithstanding the provisions of section 323.15 of said statutes?”
The pertinent portion of the statute alleged by plaintiffs to be in conflict with the ordinance is Section 323.15(2), Florida Statutes 1957, F.S.A., which reads:
“ * * * The mileage tax provided for in this section shall be in lieu of all other taxes and fees of every kind, character and description, state, county or municipal, including excise and license taxes levied or imposed against such auto transportation companies, or the operation of such business and facilities thereof, or their property, except ad valorem taxes levied upon the property other than motor vehicles of such auto transportation companies and except the gasoline tax and motor vehicle fuel tax, and except the motor vehicle license tax now or hereafter provided for by law.”
The preamble of the Ordinance provides in part as follows:
“Whereas, the City of Orlando has heretofore installed parking meters on certain prescribed streets in the said City of Orlando, and
“Whereas, the loading and unloading of freight from trucks constitutes a traffic hazard and impedes the orderly flow of traffic on and about the streets of Orlando, Florida, and
“Whereas, it is the desire of the City of Orlando to establish loading and unloading zones for the elimination of said traffic hazards and to expedite the loading and unloading of freight and to facilitate the flow of traffic on and about the streets of the City of Orlando and the City Council of the City of Orlando, Florida after due investigation and consideration has found and determined and hereby finds and determines that the establishment of such loading and unloading zones will eliminate said traffic hazards, expedite the loading and unloading of freight and materially contribute to the proper flow and control of traffic on and about the streets of the City of Orlando, * *
And the Ordinance itself provides in Section 2:
“That the City Tax Collector shall issue to applicants therefor, as herein *725 after provided, tax permits which shall be effective July 1st through June 30th of the next succeeding year. Said permits shall be issued upon the payment of Ten Dollars ($10.00) for the first permit issued to an applicant and One Dollar ($1.00) for each succeeding permit issued to the same applicant.”
The entire philosophy upon which the plaintiffs are arguing their case is that the legislature has prescribed certain taxes on auto transportation companies and prohibited others and that the use of the permit by the City of Orlando is in derogation of such statute and hence does not apply. On the other hand the defendant takes the position that the issuing of permits is a valid exercise of its police power in the regulation of traffic. No ground of attack has been made on the ordinance as an arbitrary exercise of police power, nor is it argued that the ordinance is primarily a revenue measure rather than one for the regulation of traffic. Hence, the question before us is narrowed to a question of whether or not the ordinance is a lawful exercise of the police power.
None of the parties have cited any cases in the State of Florida directly in point on this question, nor have we found any ourselves. However, our Supreme Court has had an occasion to rule explicitly on the general traffic problems in or about the streets of a municipality. In State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314, 315, the Supreme Court stated:
“From a constitutional standpoint, there is no doubt of the power of a municipality to regulate by ordinance traffic on its streets when reasonably necessary for public safety and good order, and to reasonably limit the parking time of motor vehicles using streets in congested areas. * * * ”
And again in Gate City Garage v. City of Jacksonville, Fla.1953, 66 So.2d 653, 656, our Supreme Court said:
“ * * * The regulation of traffic on the streets, the elimination of congestion and hazards to life and property, the safety and convenience of the travelling public constitute a vital part of the police power of municipalities.”
Our Supreme Court having held that a municipality may properly enact a parking meter ordinance in certain areas, we then come to the question of whether or not plaintiffs are exempt from this particular ordinance by reason of the fact that, as they allege, it is a tax.
The same question, although the facts are different, was decided in Bowers v. City of Muskegon, 305 Mich. 676, 9 N.W.2d 889, 890, where in a suit to enjoin a parking meter ordinance it was stated:
“Plaintiffs appeal and contend that a municipality is without power to establish a system of parking meters where, as in Michigan, there is a law providing for license fees applicable to local cars. Plaintiffs rely upon 1 Comp. Laws 1929, § 4638 (Stat.Ann. § 9.1438), which provides: ‘The secretary of state shall collect the following specific taxes at the time of registering a motor vehicle which shall exempt it from all other taxation, either state or local * * *>
“The provision that the registration fee should exempt the vehicle from all other forms of taxation first appeared in section 2, sub-section 6 of Act No. 181, Pub.Acts 1913. The above phrase ‘forms of taxation’ was written into the motor vehicle law of 1915, Act No. 302, § 7, Pub.Acts 1915, 1 Comp.Laws 1915, § 4803.
“In Vernor v. Secretary of State, 179 Mich. 157, 146 N.W. 338, Ann.Cas.1915D, 128, we had occasion to interpret the 1913 amendment, which provided :
“ ‘The Secretary of State shall collect the following fees before register *726 ing a motor vehicle or vehicles in accordance with the provisions of this act, which shall exempt such motor vehicles from all other forms of taxation :***.’
“We there held that the effect and purpose of the amendment was to remove the vehicle from assessment and tax rolls of cities and other governmental units. The act was directed against additional taxes levied on the vehicle. At the present time, the law speaks in terms of ‘specific taxes’ rather than ‘fees’ as interpreted in the Vernor case, supra.
“In our opinion, the legislature in using the term ‘fees’ or ‘specific taxes’ had in mind that the registration fee or tax would exempt the vehicle from all other forms of taxation. The ordinance involved in the case at bar does not impose a tax upon vehicles. It merely imposes a fee for the voluntary use of a particular space for a designated period. There is no conflict between the ordinance and this provision of the statute.”
Then again in Missouri in a suit to enjoin the city from enforcing the parking meter ordinance under the contention that the ordinance conflicted with state law, the court in the case of Wilhoit v. City of Springfield, 1943, 237 Mo.App. 775, 171 S.W.2d 95, 99, had this to say:
“Subsection ‘c’ of said section 8395 [V.A.M.S. § 301.340], provides: ‘Municipalities may, by ordinance, levy and collect license taxes from the owners of and dealers in motor vehicles and trailers residing in such municipalities * * * but such license taxes shall not exceed the limitation on registration fees, now or hereafter provided by law, exclusive of any drivers’ license fees, including the cost of plate or sticker and notarial fee. * * * and provided further, that when the owner of any motor vehicle or trailer, or chauffeur or registered operator shall have complied with the requirements of this article he shall not be required to pay any license tax or fee to any municipality, or to submit to any other requirement, except as authorized by this article, in any municipality of this state * *
“Subsection ‘b’ delegates to the city the power to regulate the parking of vehicles on the streets. This grant of authority carries with it broad discretionary power and under the word' ‘regulate’ the city may invoke all the reasonable and necessary police powers it may have in enforcing its control over the streets, and particularly with respect to the parking of vehicles. Roper v. Greenspon, supra [272 Mo. 288, 198 S.W. 1107, L.R.A.1918D, 126]; McGill v. City of St. Joseph, supra [225 Mo.App. 1033, 38 S.W.2d 725].
“As we view it the Legislature did not intend by the enactment of subsection ‘c’ to abrogate, abridge, restrict or limit the police power delegated to the city and that the provisions of the said subsection ‘c’ do not prevent the collection of a fee that is merely incidental and referable only to the police power, and enacted only for the purpose of purchasing, installing, maintaining and enforcing such regulatory provisions. Such fee is not in the nature of a tax as that term is ordinarily used; nor is it a rental fee, but is a fee or charge referable solely to the police power of the city to regulate parking and is to be used for the purposes above enumerated. * * * ”
It must be remembered that in the present case the ordinance does not require the plaintiffs to park in these particular spaces but only provides that in the event that they do they then come under the ordinance. In its brief the City makes this statement, “If plaintiffs’ contentions are sound, it would appear that they would be entitled to *727 park in ‘metered zones’ of the city without depositing money, thereby acquiring unlimited parking privileges within those portions of the city where parking regulations have been found necessary in the exercise of the police power.” With this statement we agree.
The holdings in the cases of Bowers v. City of Muskegon, supra, and Wilhoit v. City of Springfield, supra, appear to us to be in point. The ordinance requiring plaintiffs to obtain “tag permits” from the defendant in order to utilize loading zones, under the circumstances of this case, is not violative of Chapter 323, Florida Statutes 1957, F.S.A. and the fiftal decree of the lower court should be affirmed.
Affirmed.
ALLEN, Acting Chief Judge, and SAN-DLER, HARRY N., Associate Judge, concur.