————o————

THE CITY OF ST. LOUIS, Respondent, *vs.* WILLIAM FITZ, Appellant.

1. *Offenses—Association with thieves, aiding and abetting—Individual morality —Public protection.*—An individual may associate with thieves, &c., without being guilty of any offense, for it is not the business of the legislature to keep guard over individual morality; but if such person so associates with a design to aid, abet or promote, or in any way assist, the parties charged with, or suspected of, being thieves, prohibitory legislation may be applied, not to correct the evil consequences which such association may bring on the individual, but to protect society from actual or anticipated breaches of law.

PER SHERWOOD, JUDGE, CONCURRING.

1. *Ordinances—St. Louis, City of—Associating with thieves—Validity of.*—The ordinance of the city of St. Louis, (City Ord., Chap. 20, Art. 4§1,) prohibiting the "knowingly associating with persons having the reputation of being thieves and prostitutes," is void as invading the right of personal liberty.

*Appeal from St. Louis Criminal Court.*

*David Murphy*, for Appellant.

I. The association of defendant should have been presented to the jury, by the evidence and the instruction, to have been for the purpose of rendering assistance to the dangerous class. proscribed by the ordinance. That is evidently the purport of the ordinance, or it is without authority of law. (Rex vs. Woodfall, 5 Burr., 2667; 14 Mo., 561; O'Connell vs. Reg., 11 Cl. and F., 155 ; Rex vs. Kenrick, 5 Q. B., 61 ; Brown's Com., (2d Ed.) 870.)

II. The offense should be stated with particularity, that the defendant may be able to meet the charge. (State vs. Tuley, 20 Mo., 422 ; J'Anson vs. Stuart, 1 Term., 748.)

III. The names of the persons, who are alleged to be persons having the reputation of being thieves and prostitutes, should be set out. (Gale vs. Reed, 8 East., 80; 1 Rol. Abr.)

*T. J. Cornelius*, for Respondent.

I. " Courts will give ordinances a reasonable construction, and will incline to sustain rather than overthrow them." (Dill. Mun. Corp., § 353, and cases cited.)

NAPTON, Judge, delivered the opinion of the court.

The defendant was charged in the Police Court of the city of St. Louis, with violating the ninth clause of the first section of article 4, chapter 20, of the city ordinances, " by knowingly associating with persons having the reputation of being thieves and prostitutes, previous to August 21, 1871."

The trial resulted in his conviction by the Police court, and the imposition of a fine of five hundred dollars. An appeal was taken to the Criminal Court, and the defendant was again tried and convicted, and the same fine inflicted.

On the trial, the court instructed the jury, " that if they believed from the evidence, that the defendant, William Fitz. has, within a year prior to the 21st day of August, 1872, knowingly associated with persons having the reputation of being thieves and prostitutes, then they will find him guilty under ordinance, and assess the fine in a sum not less than five hundred dollars."

The defendant asked an instruction, " that the word asso-

ciate implies an identification or community of interest, and that it is incumbent on the city to prove, that defendant has, in the city of St. Louis, within a year from the filing of the complaint herein, associated, knowingly and unlawfully, with thieves and prostitutes, with an intent to assist or encourage such persons in the perpetration of some act prohibited by law or the ordinances of the city of St. Louis, or they must acquit."

The instruction was refused.

By the common law a conspiracy was an indictable offense. That was an association of two or more persons to break the law, whether this association resulted in any act to be done by the conspirators, or not. The gist of the offense was conspiring for an unlawful purpose, or to effect a lawful purpose by unlawful means. This furnished a formidable weapon to the law officers of the crown, and was therefore strictly construed by the English judges. In indictments and other forms of criminal proceedinge to enforce this law, all the specific allegations were required to be made, which contributed to point out the offense.

The ordinance, for the breach of which the defendant is prosecuted, goes beyond the common law crime of conspiracy, and declares association with certain persons, suspected with being thieves or prostitutes, an offense.

The theory, upon which the case was tried in the Criminal Court, seems to have been, that a mere association with the class of persons described subjected the defendant to a criminal prosecution, without regard to the commission of any offense against the law, or any intent to commit such offense.

We find, on a careful examination of the evidence, that the reputation of being thieves or prostitutes is ascertained by calling the police officers, who are the prosecuting parties. Foi, in this case, all the witnesses outside of the police force, including some fifteen or twenty of the neighbors and associates of the defendant, contradict the statements of the police officers concerning the reputation of the persons alleged to be thieves and in whose society the defendant was found. So

that, adopting this theory, the ordinance in question simply authorizes any police officer in the city to arrest any man who may be found at a drinking saloon, licensed by the city, or at a brothel, also licensed, in company with persons suspected by the police as thieves or prostitutes, and a fine of $500 is imposed for being found at places which the city authorities see fit to·license, without any complicity being shown with the people there found to commit any unlawful act whatever.

We do not wish to be understood as intimating, that the verdict of the jury was wrong on the evidence. It may be that they discredited the witnesses for the defense, as they had a right to do. The Criminal Court, who heard the evidence, having refused to set aside the verdict, this court cannot interfere..

But we doubt the validity of this ordinance, as·interpreted by the Criminal Court. We doubt the power of the State Legislature to pass such a law, giving it the construction which was given in this case. There is no doubt of the power of the Legislature, or of municipalities deriving their power from the Legislature, to·make police regulations designed to promote the health and morals of the community. Laws to prohibit or regulate gaming, sales of intoxicating liquors, houses of prostitution, and thus indirectly advance the morals and good order of society, are beyond question. But, as a general rule, Legislatures do not attempt to·regulate the morals or habits of individual citizens. When a positive breach of law is reached, or when the act of the citizen is such as to justify an implication of an intended breach of law, then the criminal law may interfere, but not till then. So long as the power and right of locomotion is conceded, and a citizen has the right of selecting his associates, it is difficult to see how the Legislature can interfere, upon the mere ground of correcting the morals of the person concerned. An association with thieves, or with persons suspected to be thieves, or having the reputation of being thieves, may be very injurious to the person seeking such society, but it is

not the business of the Legislature to keep guard over individual morality. But if such person so associates with a design or intent to aid, abet, promote, or in any way assist the parties charged or suspected of being thieves, prohibitory legislation may well be applied, not to correct the evil consequences which such association may bring on the individual, but to protect society from actual or anticipated breaches of law.

Although the evidence in this case did not show, that any of the persons named as reputed thieves had ever been charged or convicted of such a felony, yet we may suppose a case where a person had been so convicted and sent to the penitentiary. Such person might well be said to have the reputation of being a thief, as he had actually been convicted and punished as such by a competent judicial tribunal; but even in such case, is he therefore marked as a leper in society, to be avoided by his former associates? This would close the door to repentance or reformation, and once a thief always a thief would be the maxim upon which police officers would act. Perhaps the maxim may answer very well, practically for them, especially in justifying precautionary measures, but it will not, and ought not to be enforced by courts, whose business it is to administer justice. However humble may be the citizen arrested under an ordinance prohibiting intercourse with such former criminal, his right to select his own company, so long as no actual breach of law occurs, and no intended breach of law can be established, is as sacred, and as much under the protection of the State, as though he moved in the more elevated spheres of society. The tendency of power to pass from the many to the few is sufficiently rapid without further encouragement, and the power to arrest for keeping bad company is a dangerous one, liable to great abuses and partial and unjust discriminations. The principal ground, on which the police witnesses in this case based their testimony of the reputation of certain persons, whom they declared to be thieves and prostitutes, was, that they lived in the neighborhood of the defendant, on Almond street, and this neighborhood was infested with thieves and prostitutes;

so that any other man or woman might as well have been arrested and fined, as the defendant. It may have been his misfortune to live in such a locality. It seems, that he was born and lived there all his life with his mother and sisters, whom he supported by his labor, and who were conceded to be reputable persons. The defendant's circumstances may not have enabled him to change his abode, and so his associations were necessarily bad. Yet he proved by all the witnesses called, nearly twenty, that he was industrious, frugal-honest, and constantly in the day employed as a laborer by the East St. Louis Elevator Company, and had never been charged or suspected of any offense against any law or ordinance of the State or city, until this arrest under the ordinance in question.

I do not mention this as any reason for reversing this judgment. The jury were the judges of the facts in evidence; it is only stated to illustrate the danger of leaving to ministerial officers the construction of an ordinance so vaguely framed and capable of such latitudinous construction.

The judgment will be reversed, because the court refused to give such explanations of the law to the jury as would have required some proof of complicity, actual or intended, with the persons named as having the reputation of being thieves.

Moreover, considering this as a criminal proceeding, as it was treated throughout in the Criminal Court, the charge was too indefinite and vague to be tolerated in such proceedings. There is no place named, not even this city, where the offense was committed. No names are given of the persons said to be laboring under the reputation of being thieves. How, under such a charge, was the defendant to prepare his defense?

It is not to be understood, that this court declares the ordinance in question invalid, but when it is to be enforced by judicial tribunals, the explanations asked by the defense in this case should go to the jury. It is clear that a mere casual association, or an association for honest purposes, was not within the intent of the ordinance, yet, under the instruction

given, the jury might have believed this highly penal prohibition to have been absolute and unqualified.

Judgment reversed. The other Judges concur, except Judge Wagner, who is absent.

Separate opinion of Judge SHERWOOD.

I concur in the above reasoning and in the result reached. But I will not be understood as concurring in such portion of the foregoing opinion which seemingly intimates the validity of the ordinance in question. I hold the ordinance absolutely invalid, on the broad ground, that its direct effect is to invade and necessarily destroy one at least of those "certain inalienable rights" of the citizen bestowed by the Creator and guaranteed by the organic law, personal liberty.

In sparsely populated regions the encroachments on this right are infrequent, but it is in districts having dense population where encroachments on the liberty of the citizen are of more frequent occurrence, and more frequently successful. And such attempted encroachments are usually justified on the specious plea of necessity. Besides, the power to restrain certain associations must necessarily imply and embrace the power to compel such associations, whenever those having the authority to prohibit shall thus determine.