THE CITY OF ST. LOUIS v. ROCHE, *Appellant.*

Division Two, May 21, 1895.

1. **Evidence:** JUDICIAL NOTICE: CITY ORDINANCE. Courts will not take judicial notice of city ordinances.

2. ———: ———: ———. A conviction under a city ordinance can not be sustained where it was not read in evidence

3. **City Ordinance:** REPUTATION: EVIDENCE. The fact that, on the trial of one for violating a city ordinance in knowingly associating with persons having the reputation of being thieves, policemen testify that the persons with whom defendant associated had the reputation of being thieves does not constitute proof of the evil reputation of such associates, and this is true though such testimony is admitted without objection.

4. ———: ASSOCIATING WITH THIEVES: PERSONAL LIBERTY. A city ordinance making it an offense for anyone to knowingly associate with persons having the reputation of being thieves, gamblers, etc., for the purpose of aiding and abetting such persons in their unlawful acts is invalid because it is an invasion of personal liberty.

*Appeal from St. Louis Court of Criminal Correction.*
HON. JAS. R. CLAIBORNE, Judge.

REVERSED.

*Thos. B. Harvey* for appellant.

(1) The verdict is against the evidence, because there is no proof of the existence of the municipal ordinance alleged to have been violated. The existence of a law to be violated is the first essential fact in a prosecution. In the record presented, there is not the slightest suggestion of any proof of the ordinance alleged to have been violated. And courts will not take judicial notice of municipal ordinances. *State ex rel. v. Sherman*, 42 Mo. 210; *Bowie v. Kansas City*, 51 Mo. 454; *Inhabitants v. Robinson*, 75 Mo. 192; *St. Louis v. Railroad*, 12 Mo. App. 591; *Keane v. Klausman*, 21 Mo. App. 485. (2) The verdict is against the evidence, because, *first*, there is no proof that the alleged associates of appellant had general reputations as thieves, pickpockets, etc.; *second*, and there is no proof whatever that the alleged association of the parties was for the purpose of conspiring, aiding or abetting in the commission of crime. (3) The case of *City v. Fitz*, 53 Mo. 582, is conclusive on appellant's behalf.

*W. C. Marshall* for respondent.

(1) On the record presented, the judgment is right and should be affirmed. (2) Proceedings of this character are not criminal proceedings. *St. Louis v. Knox*, 74 Mo. 81; *Ex parte Hollwedell*, 74 Mo. 395. (3) There being sufficient evidence to support the charge, and the case having been tried by the court without a jury, and no objections having been made or saved to the admission of any evidence and no instructions having been asked or given, the judgment should be affirmed. *Reese v. Cook*, 17 Mo. App. 512; *Noland v. Bruster*, 17 Mo. App. 497; *Tyler v. Larimore*, 19 Mo. App. 445; *Bank v. Bradley*, 11 Mo. App. 599; *Holiday v. Langford*, 13 Mo. App. 594. (4) Every presumption will be indulged in favor of the correctness of the judgment below, and the appellant must show some error committed, which this record fails to do. *State v. Burns*, 85 Mo. 47; *Porth v. Gibert*, 85 Mo. 125; *Goode v. Crow*, 51 Mo. 212; *State v. County Court*, 51 Mo. 522; *Acock v. Stewart*, 57 Mo. 150. (5) The same presumption flows from the acts of a court of limited jurisdiction where the jurisdiction of the court once attaches. *Brooks v. Duckworth*, 59 Mo. 48; (6) If the party appealing does not bring up the full record, the supreme court will infer what is necessary to sustain the judgment. *Goode v. Crow, supra; State v. County Court, supra.* (7) Every reasonable intendment should be made in favor of the regularity of the proceedings, until the contrary is made to appear affirmatively by the showing of the complaint. *Beckley v. Skroh*, 19 Mo. App. 75; *Holton v. Kemp*, 81 Mo. 661; *Blair v. Railroad*, 89 Mo. 383.

BURGESS, J.—Defendant was charged in the St. Louis court of criminal correction with violating the eighth clause of ordinance number 14000, chapter 25, article 6, section 1023, of said city, by knowingly, willingly and unlawfully associating with persons having the reputation of being thieves, burglars, pickpockets, pigeon droppers and gamblers, for the purpose, and with the design and intent, of conspiring and combining with such parties to aid, abet, assist and promote them in gambling, gaming and pigeon dropping at divers gambling houses, and at places for the reception of stolen property, and which said gambling houses and places were the resort of thieves, burglars, pickpockets and pigeon droppers. The trial resulted in his conviction by the court of criminal correction and the imposition of a fine of $500. From the judgment rendered, defendant appealed.

The case was tried by the court without the aid of a jury. No exceptions of any kind were saved to the action of the court, except in overruling the motions for new trial and in arrest, to which exceptions were duly and timely made.

Defendants first contention is that there was no evidence to support the finding and judgment of the court. This contention is predicated of the fact that the ordinance which the defendant was charged with violating was not offered or read in evidence upon the trial.

The rule is well settled in this state that courts will not take judicial notice of the ordinances of municipalities. *State ex rel. v. Sherman*, 42 Mo. 210; *Bowie v. Kansas City*, 51 Mo. 454; *Inhabitants of Butler v. Robinson*, 75 Mo. 192; *St. Louis v. Railroad*, 12 Mo. App. 591. *Keane v. Klausman*, 21 Mo. App. 485. If there was any such ordinance as that described in the information, it should have been introduced in evidence,

without which there was no evidence to support the finding and judgment of the court. The failure to read the ordinance in evidence did not go to the weight of the evidence merely, but without it there was an entire failure of evidence. Without it there is nothing upon which the judgment of conviction can stand. It was the very foundation upon which the prosecution was bottomed, and the only guide by which it could possibly be determined whether defendant had violated it or not, and which could not be determined otherwise than by its production in court, as a matter of evidence. A conviction could just as well be had for the forgery of a note, without producing it in evidence, or in any way accounting for its absence, so as to authorize the introduction of secondary evidence of its contents, as for the violation of a city ordinance without reading it in evidence, unless waived. We are unable to see any difference in principle.

Moreover, there was no evidence that the persons with whom defendant was charged with associating were of the disreputable character alleged in the information, or that defendant had knowledge thereof, even if it had been proven. It is true that several policemen testified that they had the reputation of being thieves, and one witness testified that the defendant Roche had once been convicted but was subsequently granted a new trial and acquitted.

We do not understand that reputation can be proven in that way, or that such evidence, if indeed it can be called such, is any proof of bad reputation, although admitted, as in this case, without objection. As a general rule, it must be proven by witnesses who are able to state that they are acquainted with the *general* reputation of the person whose character is in issue; and they should be able to testify from a personal knowl-

edge of his reputation, or from knowledge which has been acquired from those who have had an opportunity to know. Reputation is not established by what may be said by a few persons who do not know what it is, even though they may say that it is bad, but must be shown by personal knowledge, or by what the people generally say. *Cheritree v. Roggen*, 67 Barb. 124; *Davis v. Franke*, 33 Gratt. 413; *Martin's Executrix v. Martin*, 25 Ala. 201; *Kelley v. Proctor*, 41 N. H. 139.

The witnesses who testified to the bad reputation of those with whom defendant was charged with associating did not pretend to state that they knew their general reputation in the neighborhood in which they lived, or their *general* reputation, and each one of them stated that all he knew of their reputation was from what he had learned from other policemen. If a person's reputation can be shown to be bad by such facts and circumstances as were introduced in evidence in this case, few could be found whose reputation would, for any length of time, pass unharmed.

The only question remaining to be disposed of is as to the validity of the ordinance, if it be correctly set out in the information, which, for present purposes, may be conceded. If it can be made a penal offense for a person to associate with those of his own choosing, however disreputable they may be, when not in furtherance of some overt act of public indecency, or the perpetration of some crime, then it necessarily follows that by the same authority he may be compelled to associate with persons *not* of his own choosing. There is no difference in principle. While the right of a municipal corporation to pass all needful laws and ordinances for the health and well being, and to promote the morals, of its inhabitants can not be questioned, in doing so, it must not invade the rights guaranteed to them by the organic law of the land, among which may

be classed that of civil liberty, which right is directly abridged by the ordinance under consideration making it a penal offense to knowingly associate with persons having the reputation of being thieves, burglars, etc.

The offense consists not in aiding or abetting in the commission of some specific unlawful act, or in conspiring to do so, but in knowingly and unlawfully associating with certain persons having the reputation of being thieves, burglars  *  *  *, for the purpose and with the design and intent of conspiring and combining with said parties to aid and abet, assist and promote such parties, and that they did then and there aid, abet, assist and promote the parties aforesaid in gaming, and other unlawful, and immoral acts.

Our constitution and laws guarantee to every citizen the right to go where and when he pleases, and to associate with whom he pleases, exacting from him only that he conduct himself in a decent and orderly manner, that he disturb no one, and that he interfere with the rights of no other citizen. In a case somewhat similar with respect to the rights of a citizen, the supreme court of Michigan said: "Personal liberty, which is guaranteed to every citizen under our constitution and laws, consists of the right of locomotion,— to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens." *Pinkerton v. Verberg*, 78 Mich. 573.

This same ordinance was before this court in *St. Louis v. Fitz*, 53 Mo. 582. Since then it has been amended so as, we presume, to conform as nearly as may be to the views therein expressed. But the amendment did not in our opinion add anything to its force or validity, and that case should be overruled. It was, however, in course of the opinion well said:

"Although the evidence in this case did not show, that any of the persons named as reputed thieves had ever been charged or convicted of such a felony, yet we may suppose a case where a person had been so convicted and sent to the penitentiary. Such person might well be said to have the reputation of being a thief, as he had actually been convicted and punished as such by a competent judicial tribunal; but even in such case, is he, therefore, marked as a leper in society, to be avoided by his former associates? This would close the door to repentance or reformation, and once a thief always a thief would be the maxim upon which police officers would act. Perhaps the maxim may answer very well, practically for them, especially in justifying precautionary measures, but it will not, and ought not to be enforced by courts, whose business it is to administer justice. However humble may be the citizen arrested under an ordinance prohibiting intercourse with such formal criminal, his right to select his own company, so long as no actual breach of law occurs, and no intended breach of law can be established, is as sacred, and as much under the protection of the state, as though he moved in the more elevated spheres of society."

As was held by SHERWOOD, J., in the separate opinion in that case, the ordinance is "absolutely invalid, on the broad ground that its direct effect is to invade and necessarily destroy one, at least, of those 'certain inalienable rights' of the citizen bestowed by the Creator and guaranteed by the organic law, personal liberty."

From these considerations it follows that the judgment should be reversed, and the defendant discharged. It is so ordered. All of this division concur.