CITY OF SPRINGFIELD, MISSOURI, Respondent, v. FREDDIE STEVENS, Appellant.—No. 40549.—216 S. W. (2d) 450.

Court en Banc, January 7, 1949.

700

*J. D. Gustin* for appellant.

*John F. Carr* for respondent.

[452] ELLISON, J.—This case, founded on an ordinance of the City of Springfield, was argued and submitted in Division I of this court at the April session, where an opinion was prepared by Dalton, C. It failed of adoption, two of the judges in that Division having concurred and two dissented. For that reason it was transferred to the court en banc, and submitted at the present October session on the briefs, without oral argument. We have appellate jurisdiction under Art. V, Sec. 3, Const. Mo. 1945, because a constitutional question is involved, the appellate contending the ordinance violates Art. III, Sec. 40, par. 30, Const. Mo. 1945, in that it is a local and special

704

law where a general law could have been made applicable. We set out the opinion below, with a few minor changes but without quotation marks, and have numbered the paragraphs ·for convenience in reference hereafter.

(1) Defendant was convicted of ·violating an· ordinance of the City of Springfield prohibiting taxicab drivers ·from having in their possession, carrying or transporting in their taxicabs intoxicating beverages of any kind and a fine of $10 and costs was imposed. He has appealed. The errors assigned concern the sufficiency of the complaint and the evidence, the validity of the ordinance and its construction, if valid, and the admission of evidence.

(2) Appellant, a taxicab driver, was employed by a licensed taxicab company of the City of ·Springfield and was operating a licensed taxicab. On January 30, 1947, about 9:30 a. m., A. C. Boehm, the official Taxicab Inspector of the City of Springfield, saw appellant operating his taxicab and saw him park·in front of the St. Louis Street Liquor Store in said city. Appellant got out and went into the store and, a little later, returned to the taxicab with a package which he laid on the seat beside him. Boehm testified: ''I hurried up there, and he started his engine, ready to start out, and I stopped him and took the package and looked into it, and I found· this bottle here.'' Appellant was alone in the taxicab. The bottle, a fifth of wine, was marked ''Italian Swiss Colony, Type-California Port, Alcohol 20% by volume.'' Boehm took possession· of·it and it was offered in evidence at the trial.

(3) With reference to his arrest by Boehm, appellant testified: ''He just got in and asked me where I was going, and I told him I was taking some wine to a sick lady, and he said, 'Is that all you got in your bottle?' and I said, 'Yes, sir' . . and·he said, 'Where are you going with that wine?' and I said, '900-block on Hamilton.' And he said, 'No, you are not, you are going to the police station with me.' '' Appellant admitted that he was on duty for the taxicab company by whom he was employed; and that he was making a special [453] trip to get and deliver the wine. Appellant further offered evidence to the effect that the wine was intended for use as medicine by a sick person who had no one else to send for it.

(4) Appllant contends the court erred in overruling his motion to dismiss the complaint on the ground that it did not comply with Sec. 6796 R. S. 1909 and Sec. 847.36 R. S. A., Laws 1943, p. 369, Sec. 36. Appellant insists the facts stated in the information are too indefinite and uncertain to bar another action for the same offense; that no relief whatever is demanded, or fine sought; and that appellant was entitled to be informed concerning the relief demanded.

(5) The complaint is, in part, as follows: ''John A. Carr, City Prosecutor within and for the City of Springfield, County of Greene, State of Missouri, being by me duly sworn, upon his information and

belief, informs the Court that on or about the 30th day of January 1947, one Freddie Stevens, a taxicab driver, at the aforesaid City and within the limits of said City, did then and there wilfully and unlawfully have in his possession and carry and transport in his taxicab, intoxicating beverage or liquor, towit: one bottle of wine, contrary to the City Ordinance, Section 443 (sic) Article 4, Chapter VI, Revised Ordinance of City Spfd (sic) 1946, in such cases made and provided and against the peace and dignity of the City.''

(6) We assume the number ''443'' is a typographical error in the record. No reference is made to it and no objection was made to the admission in evidence of Sec. 554 and all other sections of Article 4, Chapter VI of the ordinance, except Sec. 561, the penalty section, which called for the imposition of a fine of $10 to $50 for its violation. In the brief appellant states that the action is based on Sec. 554 of the ordinance.

(7) Section 6796, supra, provides: ''All prosecutions for the violation of any city ordinance shall be entitled 'The City of ———— against ————' (naming the city and the person or persons charged), shall be in writing and shall set forth the offense in plain, ordinary language, giving the ordinance and section violated; may contain one or more counts for the same or different offenses; and *shall be governed by the rules of civil procedure as to form and substance*, except that the truth thereof shall be sworn to upon the information and belief of some person whose signature shall appear on the complaint.'' (Italics ours). Section 847.36, supra, of the new Civil Code, in part, provides: ''A pleading which sets forth a claim for relief . . shall contain (1) . . and (2) a demand for judgment for the relief to which he deems himself entitled. If a recovery of money be demanded, the amount shall be stated . . . '' In this respect the section is very similar to Sec. 916 R. S. 1939, which has been repealed.

(8) The information was suffifficient in form and substance. This proceeding originated in the city court before the municipal judge. Sec's 6794 and 6803 R. S. 1939. A prosecution in violation of a city ordinance is in the nature of a civil action. City of St. Louis v. Fitch, 353 Mo. 706, 183 SW. (2d) 828; City of Cape Girardeau v. Smith (Mo. App.) 61 SW. (2d) 231. The same strictness is not required as in a criminal prosecution. City of Poplar Bluff v. Meadows, 187 Mo. App. 450, 173 SW. 11, 12. Appellant was specifically advised of the time and place and particular in which he had violated the ordinance. The allegations fully advised him of the nature of the complaint against him and the number of the ordinance (article and chapter) upon which the prosecution was based. It would be difficult to believe that appellant was misled as to the purpose of the prosecution or the relief sought.

(9) A complaint in a prosecution for the violation of a city ordinance is ordinarily sufficient where it describes the act complained of in the language of the ordinance. City of St. Louis v. Weitzel, 130 Mo. 600, 612, 31 SW. 1045. The complaint met the specific requirements of Sec. 6796, supra. The failure exactly to comply with the provisions of Sec. 847.36, supra, by including in the complaint a demand for relief by the imposition of a fine, was not fatal. It has not been so held heretofore under the similar statute, Sec. 916, supra. [454] Eldon Ice & Fuel Co. v. Van Hooser, 163 Mo. App. 591, 593, 147 SW. 161; Lakey v. Hoops, 80 Mo. App. 508. The charge was definite enough to bar a subsequent prosecution for the same offense. The absence of an express prayer or demand for relief was not material, in view of the reference to the ordinance violated. Sec's 6796 and 6798, R. S. 1939; City of St. Louis v. Liessing, 190 Mo. 464, 474, 491, 89 SW. 611; City of Moberly v. Kervin (Mo. App.) 234 SW. 514; The City of St. Louis v. Vert, 12 Mo. App. 571, affirmed 84 Mo. 204, 208.

(10) Appellant contends that Sec. 554 of Article 4, Chapter VI of the Revised Ordinances of the City of Springfield, Missouri, 1946, is void (1) because it is "inconsistent with the provisions of the statutes of Missouri governing the sale of intoxicating liquors"; (2) "for the reason that it is not within the powers conferred on cities of the second class by the laws of Missouri"; and (3) because it "is obnoxious to the constitutional prohibition against local or special legislation . . Sec. 40, paragraph 30 of Article III of the Constitution of Missouri 1945."

(11) The ordinance in question is a rather detailed ordinance providing for the licensing and regulation of taxicabs. It deals at length with such matters as liability insurance, sanitation, work sheets, reports to the police, parking, the designation, marking, operation and use of taxicabs, the licensing of taxicab owners and drivers, the filing of rates, solicitation of passengers, restrictions on number of passengers and other matters. The office of Taxicab Inspector is established and his duties fixed. Section 554 is as follows: "No taxicab driver shall have in his possession, or shall carry or transport in his taxicab, intoxicating beverages of any kind, and no taxicab driver shall drink any intoxicating beverages of any kind while on duty. . . No taxicab owner, or any employee of the owner, shall have in his possession, or carry or transport in his taxicab and/or their taxicabs intoxicating beverages of any kind . . . : "

(12) Appellant argues (1) that the authority of the city over the subject of intoxicating liquors is limited to fixing and collecting license fees from distillers, brewers, and others and to the passage of ordinances regulating and controlling the sale thereof. (Sec. 4904 R. S. 1939); and (2) that a municipal ordinance regulating subject

matters and things upon which there is a general law of the state must be in harmony with the state law. Sec. 7442 R. S. 1939.

(13) Article 4 of Chapter VI of the ordinance in question upon its face purports to be an ordinance regulating taxicabs, not intoxicating liquor. The ordinance was authorized by Sec. 6609 R. S. 1939, paragraphs XI, XVIII and XX. By that statute cities of the second class are given express authority to regulate the use of streets, to license, tax and regulate "street railway cars, omnibuses, hansom cabs, hackney coaches, drays, job wagons, carts, carriages, barouches, buggies, wagons, automobiles, motorcycles, bicycles and all vehicles, private or public. . . To define, suppress, prohibit, and prevent all acts, practices, conduct, business, occupations, calling, trades and all other things whatsoever, detrimental to the health, good morals, comfort, safety, convenience and welfare of the inhabitants of the city, and all nuisances and causes thereof." These provisions of the statute were not affected by the Liquor Control Act. Article 1, Chapter 32, Sec. 4874 et seq., R. S. 1939. Repeals by implication are not favored. The fact that a city ordinance enlarges on the provisions of a statute by exacting additional requirements creates no conflict therewith, unless the statute is all inclusive. State ex rel. Hewlett v. Womach, 355 Mo. 486, 196 SW. (2d) 809; Vest v. Kansas City, 355 Mo. 1, 194 SW. (2d) 38; McGill v. City of St. Joseph, 225 Mo. App. 1033, 38 SW. (2d) 725.

(14) Concerning the constitutionality of the ordinance, appellant contends that "Of all the numerous methods of transportation of passengers and the delivery of merchandise which the charter entrusts to the discretion of the city council, they selected the single one of taxicabs and taxicab drivers. . . It was the purpose of the council to . . . impose special restrictions not required of other vehicles and [455] drivers engaged in the same or similar employment. . . A general law, including all methods of transportation of passengers, or covering the delivery of liquors or merchandise generally, was as practicable as singling out a particular group." Appellant relies on the case of City of Springfield v. Smith, 322 Mo. 1129, 1143, 19 SW. (2d) 1, and cases there cited. No evidence was offered in support of any of appellant's contentions and we are limited to those matters of which we may take judicial knowledge.

(15) If the ordinance includes all who are similarly situated and there is a reasonable basis or the classification, the ordinance is not a special law that violates the constitutional provision relied upon. Jones v. Walker, 357 Mo. 476, 209 SW. (2d) 147(2); City of Springfield v. Smith, supra. The presumption exists that the ordinance is constitutional, as against the contention that it is invalid as a special law where a general law could be made applicable. Thompson v. St. Louis-San Francisco R. Co, 334 Mo. 958, 69 SW. (2d) 936, 942; City of Springfield v. Smith, supra. The ordinance in question ap-

plies to all similarly situated. There was a reasonable basis for the classification of taxicabs as distinguished from other vehicles used for the transportation of passengers for hire. It is generally recognized that taxicabs represent a legitimate class for legislative purposes. Jones v. Walker, supra, 209 SW. (2d) 1. c. 148(5). See, also, State ex rel. Crown Coach Co. v. Public Service Comm. (Mo. App.) 185 SW. (2d) 347; Frick v. City of Gary, 192 Ind. 76, 135 NE. 346; Berry on Automobiles (7th Ed.) Sec's 6.49 and 6.52. The ordinance is not unconstitutional on the ground assigned.

■ (16) Appellant contends that the court erred in admitting in evidence Sec. 561, the penalty section of the mentioned ordinance. When this section was offered in evidence appellant objected that it was outside the issues in the case. His theory is that there was nothing in the information to advise that the recovery of a fine would be sought; and that there was no pleading to support the admission in evidence of this penalty section, "even though the defendant may be bound with knowledge that he was subject to a penalty." The assignment must be overruled in view of the conclusion heretofore reached. It is further well settled that the prayer for relief is no part of a pleading and may be disregarded in determining the relief authorized. Caldwell v. Eubanks, 326 Mo. 185, 30 SW. (2d) 976, 980. The penalty section of the ordinance was admissible in evidence.

■ (17) Appellant contends the court erred in refusing the declarations of law requested by him, particularly the one numbered 3, to the effect that Sec. 554 of the ordinance did not apply "to the possession of wine to be used solely for medicinal and not for beverage purposes." Appellant's theory is that, if the section is construed to prohibit the delivery of medicines to the sick, the ordinance is unreasonable and void. Appellant further relies on the use of the word "beverage" as excluding wine to be used for medicinal purposes. We think the intended use of the wine was wholly immaterial. It was clearly within the provisions of the ordinance, as being an "intoxicating beverage", which taxicab drivers were prohibited from possessing, carrying or transporting in their taxicabs. Appellant was operating a licensed taxicab, not a delivery truck. The provision was not unreasonable. The declaration was properly refused.

■ (18) Appellant finally contends that "there is a total lack of evidence of any 'transportation' of intoxicating liquor or beverage." The trial court found appellant "guilty of transporting intoxicating liquor." Appellant says that he was stopped and arrested and his wine confiscated before the act of moving it in the cab had begun; and that his intention to transport, if not interrupted, is immaterial. Appellant further relies on Sec. 6798, supra, which prohibits a judgment "except when sufficient legal testimony is given." He argues that he was acquitted of the charge of possession. Appellant states the facts to be that "some one thought to telephone the appellant,

the driver of a taxicab, to procure and bring from downtown a bottle of wine for the use of the patient. The appellant undertook to comply with this request.'' While Boehm testified: ''I stopped him,'' he also [456] referred to appellant as ''ready to start out.''

(19) Appellant concedes that the code of Civil Procedure governs this appeal. The case was tried to the court without the aid of a jury. We are, therefore, governed by the provisions of Laws 1943, p. 388, Sec. 114d; Sec. 847.114 R. S. A., and by the provisions of Laws 1943, p. 395, Sec. 140; Sec. 847.140 R. S. A.

(20) If the judgment, as entered, was erroneous, we have full authority to correct it and give such judgment as the trial court ought to have given. Appellant admitted securing the wine and having it in his possession in the taxicab for the purpose of transporting it. In finding appellant ''guilty of transporting intoxicating liquor'', the trial court did not make a finding of facts which was inconsistent with appellant being guilty of possessing an intoxicating beverage. Webster's New International Dictionary (2nd Ed.) If intoxicating liquor was being transported; it is clear that an intoxicating beverage was being transported, and the finding of transportation necessarily included possession for the purpose of transportation. The finding as to transporting was improper on the record and it is set aside as not sustained by the evidence. The finding should have been possession of intoxicating beverage in the taxicab, at the time and place mentioned, to conform to the charge and the admitted facts. That finding is accordingly ordered entered in this court and the same fine and costs are imposed and judgment re-entered for respondent.

So much for the facts and the opinion submitted in Division I. With reference to the first two assignments in appellant's brief, charging fatal error because the written complaint filed by the City did not contain a demand for the imposition of a fine under Sec. 561 of the ordinance, we think those contentions are satisfactorily covered and answered in paragraphs marked 4 to 9, inclusive, and 16 of the above opinion.

Appellant's third assignment complains particularly of the trial court's refusal to give his tendered declaration of law which stated that the words ''intoxicating beverages'', as used in Sec. 554 of the ordinance, did not include ''wine to be used solely for medicinal and not for beverage purposes.'' Later the court found and adjudged appellant ''guilty of *transporting* intoxicating *liquor*.'' Appellant contends this showed the court entertained the erroneous view that the words ''intoxicating beverages'' in the ordinance included any intoxicating liquor, whether fit for use as a beverage or not.

The foregoing opinion in Division 1, in the paragraph marked 17, supra, held it was immaterial what use the ultimate purchaser intended to make of the wine, the sole question under the ordinance being whether the wine was an intoxicating *beverage* while in the

possession of the appellant taxicab driver; and that it was such per se. In paragraph 20 the opinion conceded the trial court's finding was too broad in using the words "intoxicating liquor", because some intoxicating liquors reasonably may not be potable and therefore could not be classed as beverages. But it concluded the finding was not fatally defective or inconsistent with the admitted facts, since the term "intoxicating liquor" is broader and usually imports alcoholic beverages. [See 22 Words & Phrases (Perm. Ed.) p. 438 "Intoxicating liquor."] The opinion further conceded there was no evidence that appellant had *transported* the wine in the taxicab before his arrest, and accordingly modified the finding and judgment to read "guilty of *possession* of (an) *intoxicating beverage*" in the taxicab.

We think the foregoing conclusions reached in paragraphs marked 17 and 20 of the opinion submitted in Division 1 were correct. The ordinance forbade a taxicab driver to have in his possession "intoxicating beverages of any kind." In this instance the bottle of port wine transported was labeled 20% alcoholic by volume. There is no controversy about the fact that it was intoxicating per se and a beverage. Whether it was adapted to medical use would depend on the ills of the patient, and the dosage and frequency thereof, as is attested by Biblical authority, I Timothy 5,23: "a *little* wine for thy stomach's sake and thine often infirmities."

[457] To say that a taxicab driver would be exempted from the provisions of the ordinance if, merely, he had been directed telephonically, or otherwise, to purchase and transport intoxicants to a specified address for medicinal use, would be to nullify it altogether in practical effect as a police regulation. In so stating we refer to cases where the intoxicants, as such, are in the direct possession of the taxicab driver, and not on the person or in the luggage of a passenger. There might also be cases where intoxicants had been sold directly to the consumer on a physician's prescription, and were delivered packaged to the purchaser by taxicab. Whether that would make a case of direct possession of the intoxicants, as such, by the taxicab driver is a question that cannot be decided until it arises.

The instant case is one of great hardship. The appellant's mother was attending an invalid woman. Someone in the family telephoned the appellant to purchase and deliver the wine. Both he and his mother said they knew (by hearsay) that wine had been prescribed for the invalid, but there was no proof of it by any physician, or otherwise directly. The appellant testified he would not have charged the sick woman any taxi fare for delivering the wine because she was an old friend of his and her husband was in California. But he admitted he was on duty at the time as taxicab driver for his company. We think the ordinance applies.

Appellant's assgnments 4, 5 and 6 assail Sec. 554 of the ordinance on constitutional and statutory grounds. The first of these complains that it singles out and imposes its restrictions on taxicabs and taxicab drivers, whereas they naturally belong in the same class with other forms of delivery service, to which the same restrictions should equally apply. He therefore contends a *general* law covering all of them was called for, and that this ordinance restricted to taxicabs is *special* legislation, in violation of Art. III, Sec. 40, par. 30, Const. Mo. 1945. In our view that contention is properly overruled in paragraphs marked 14 and 15 of the principal opinion.

Actually there are easily recognizable differences between street-cars, omnibuses, merchandise carriers and dray wagons on the one hand, and taxicabs on the other. The first two travel on fixed routes and schedules; usually are well lighted with the operator under the scrutiny of numerous mixed passengers; and in the nature of things could not transport and deliver intoxicating liquor generally. Merchandise carriers and dray wagons do not carry passengers. But taxicabs dart hither and yon; carry a small number of passengers; are a part of the day and night life of every city, and penetrate all parts of it. How much importance should be attached to these distinctions is a matter for legislative determination. And that determination must stand even though "debatable" [see the Poole case, infra[1]] unless the courts are able to say it is entirely unsupportable. St. Louis Union Trust Co. v. State of Missouri, 348 Mo. 725, 735-6(3), 155 SW. (2d) 107, 112 (5, 6); State ex rel. Holloway v. Knight, 323 Mo. 1241, 1248(4), 21 SW. 767, 770(5); Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 987(7), 13 SW. (2d) 628, 637(1).

As an illustration of the liberality with which this rule has been applied by municipal legislation to vehicles in the same general class, it was ruled in Ex parte Lockhart, supra, 350 Mo. l. c. 1231-3(7), 171 SW. (2d) l. c. 665 (17) that an ordinance made a reasonable classification in exacting a license tax from a mover of *uncrated* household goods by motor vehicle, but none on crated household goods. The opinion held the Board of Aldermen may have thought the former would be subject to greater damage. And in Jones v. Walker, 357 Mo. 476, 209 SW. (2d) 147(5), an ordinance classification was sustained which forbade taxicabs to stand on the street for more than five minutes except in emergencies, whereas busses, trucks and other vehicles for hire and [458] private vehicles of the same type and size were not so forbidden. If these classifications are valid, it would seem the one in the instant case should be.

But even if it be conceded tentatively that the ordinance here involved might have gone further and included some of these other drivers, still, as held by the court in banc in Ballentine v. Nester, 350 Mo. 58, 68-9(2), 164 SW. (2d) 378, 381(3-6): "The legislative authorities may classify with reference to an evil to be prevented, and

legislation designed to prevent one evil is not void because it does not prevent another. 'It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named.' . . A lawmaking body 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed.' "

■ Another contention is that the ordinance discriminates against and violates appellant's constitutional rights personally as a citizen. It will be recalled the particular provision here immediately involved forbids a taxicab driver "to have in his possession or (to) carry or transport in his taxicab, intoxicating beverages of any kind, and no taxicab driver shall drink any intoxicating beverages of any kind while on duty." Thereafter there are two others, one of which forbids a taxicab driver to transport a drunken passenger. The other forbids taxicab owners or employees to have intoxicating beverages around the taxicab office or place of business. It further forbids them to have such beverages in their possession, or to carry or transport the same in their taxicabs, and also forbids them to drink such beverages while on duty. •

Apparently appellant construes the word "possession" in these ordinance provisions to mean possession as a citizen. In our opinion it mean possession while on duty *as* a taxicab driver, owner or employee. But whatever these provisions referring to the owner and employees and transportation of drunken passengers may mean, they are not involved in this case. We cannot pass on this whole general ordinance all at once, with its varying fact situations, and strike down the part here involved merely because other parts may be thought invalid, unless we are able to say the City Council of Springfield would not have passed the whole enactment in which the latter are embodied had it known of their invalidity.[1]

The empowering statute, Sec. 6609, authorizes cities of the second class to regulate the use of its streets, and to license, tax and regulate a great number of vehicles, including "automobiles" and "hackney coaches." Both of these terms have been often held to include "taxicabs." 4 Words & Phrases (Perm. Ed.) p. 857; 19 ib., p. 39. And the fact that there are overlapping but nonconflicting state statutes, both criminal and regulatory, such as Sec's 4388, 4389 and 8401, R. S. 1939, Mo., R. S. A., does not take away that conferred power and nullify Sec. 6609 or the enlarging ordinance. Vest v. Kansas City, 355 Mo. 1, 3 (3), 194 SW. (2d) 38, 39(3).

[1] Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 1150(7), 125 SW. (2d) 23, 32 (19-22); State ex inf. McKittrick v. Cameron, 342 Mo. 830, 835(1), 117 SW. (2d) 1078, 1080(1); Barker v. St. L. County, 340 Mo. 986, 1000(5), 104 SW. (2d) 371, 377(9).

We think the ordinance does not impose a mere rule of personal conduct, and is not primarily a regulation of the liquor business. It is a regulation of taxicabs and their business and operations. It may be in part an auxiliary measure to prevent the transportation of intoxicating beverages by taxicab and possible bootlegging thereby. But it is preëminently a protection against indulgence by taxicab drivers in such beverages while on duty, and against drunken driving imperiling not only the passengers in the taxicab but other vehicles and pedestrians, as well. This construction is not excluded because similar restrictions are imposed on owners and employees around headquarters. And [459] it is not an abuse of municipal legislative power. It is said the conducting of a private business wholly in public streets may be forbidden altogether. Ex parte Lockhart, 350 Mo. 1220, 1230(4), 171 SW. (2d) 660, 664.

The fifth and sixth assignments argue on the view that Sec. 554 of the ordinance belongs in the class of intoxicating liquor regulations, Sec's 4904, 7442, R. S. 1939, Mo. R. S. A., and contends these statues do not authorize second class cities to regulate the transportation of "any substance designed for medicinal use." This contention is covered in paragraphs marked 10 to 13. But it should be noted that municipalities may go beyond the state law even in the regulation of sales of intoxicating liquor. State ex rel. Hewlett v. Womach, 355 Mo. 486, 493(4), 196 SW. (2d) 809, 814(6); City of Maryville, Mo. v. John R. Wood. (#40775 Mo. Div. 2, 358 Mo. 584, 216 SW. (2d) 75, decided concurrently herewith).

Appellant's seventh and last assignment complains that there was no proof that he transported the wine, since the officer arrested him before his taxicab had moved. That is true. But as heretofore stated, it was admitted that he was in possession of the wine in the taxicab, and the opinion in Division I modified the judgment of the trial court and made it apply to the possession of the liquor, instead of transportation. As this was a non-jury case that may be done here under Laws Mo. 1943, p. 388, Sec. 114(d), p. 395, Sec. 140(c), Sec's 847.114 and 847.140 Mo., R. S. A. This assignment is covered in paragraphs marked 18, 19 and 20 of the Division I opinion.

We find no reversible error and the judgment, as modified, is affirmed. *Clark* and *Hyde, JJ.*, and *Leedy, C. J.*, concur, *Hyde, J.*, in separate opinion; *Douglas, J.*, dissents in separate opinion; *Tipton* and *Conkling, JJ.*, dissent and concur in dissenting opinion of *Douglas, J.*

DOUGLAS, J. (dissenting).—Appellant, a taxicab driver, was charged with the violation of an ordinance of the City of Springfield as follows: "Defendant did then and there wilfully, unlawfully have in his possession and carry and transport in his taxicab, intoxicating beverage or liquor, towit: one bottle of wine." He was fined $10

and costs in the municipal court. He appealed to the circuit court where he waived a jury and submitted his case to the court. That court found him guilty but only of transporting intoxicating liquor. He appealed to this court. This court has ruled the ordinance under which he was convicted is a valid enactment, and is constitutional. It has, however, held the evidence did not support the judgment finding appellant guilty of transporting liquor, but does support a finding of guilt of possession of liquor, and has entered a judgment in this court accordingly.

In my opinion the ordinance under which appellant was convicted is unconstitutional. A judgment of guilt for its violation in any respect is therefore void.

The ordinance provides:

"Sec. 554. Drinking or possessing intoxicating beverages, and transporting intoxicating [sic] persons.—No taxicab driver shall have in his possession, or shall carry or transport in his taxicab, intoxicating beverages of any kind, and no taxicab driver shall drink any intoxicating beverages of any kind while on duty. No taxicab driver shall transport in his taxicab a person or persons in an intoxicated condition.

"No taxicab owner, or any employee of the owner, shall have around his office or place of business of said taxicab company any intoxicating beverages of any kind. No taxicab owner, or any employee of the owner, shall have in his possession, or carry or transport in his taxicab and/or their taxicabs intoxicating beverages of any kind. No taxicab owner, or any employee of the owner, shall drink intoxicating beverages of any kind while on duty. (Ord. 255, 341b, passed Jan. 19, 1943.)"

The ordinance in question forms a part of a general comprehensive ordinance providing [460] for the licensing, regulation and control of taxicabs.

For its authority to adopt the ordinance in question, the city relies on Section 6609 R. S. 1939, Mo. RSA granting corporate powers to cities of the second class, in which class Springfield falls. The statute has seventy-two separate sections. The city contends it was authorized to enact the ordinance under three of the sections. These are Section XI which authorizes the city to regulate the use of streets and alleys. Section XVIII which authorizes the city to regulate more than one hundred businesses and occupations, and, pertinent to this case, to regulate in particular "street railway cars, omnibuses, hansom cabs, hackney coaches, drays, job wagons, carts, carriages, barouches, buggies, wagons, automobiles, motorcycles, bicycles and all vehicles, private or public." The third section relied on is Section XX, a general welfare clause, which states: "To define, suppress, prohibit and prevent all acts, practices, conduct, business, occupations, calling, trades and all other things whatsoever, detrimental to the

health, good morals, comfort, safety, convenience and welfare of the inhabitants of the city, and all nuisances and causes thereof.''

The ordinance is a police regulation. In determining whether a city has the authority to enact such a regulation as we have here several questions present themselves. The first question is,—What evil or danger is the city attempting to avoid? The next question is, —Has the city the authority to legislate in reference to such evil? Then other questions follow. Is the evil in this case reasonably incident to the use of the streets? Is the evil reasonably incident to the operation of public motor vehicles? Is the evil characteristic of taxicab owners, their employees, and drivers? If these questions may be answered affirmatively, then more questions arise. Is the regulation reasonable? Is it lawful? Is it constitutional?

We search the whole ordinance to seek out the evil it is aimed at. Clearly its purpose is to prohibit and regulate the use of liquor. To further this purpose it restrains the possession, carrying, and transportation of liquor. These are but initial steps to accomplish the ultimate purpose of regulating the use. Such acts are not considered as evils in themselves but they have been regarded as leading to the use of liquor. The restraint against possession is general. It is not limited as to place. There are limitations specifically applying to taxicabs and to a taxicab company's office or place of business. Liquor may not be carried in cabs or kept ''around'' the office.

The ordinance is even more general as to the persons it affects. It is not a regulation against the use of liquor by drivers alone, but covers everyone connected with the taxicab business and its customers. It specifically forbids the drinking of liquor by drivers and by everyone connected with the business from the owner down. It goes even further. It restricts the use of liquor by the company's customers both those who are passengers and those seeking delivery service. For instance, the ordinance operates to regulate the use of liquor by the ''sick lady'' in this case who sought the delivery of the bottle of wine. So clearly, the ordinance is one to regulate the use of liquor and not to regulate taxicabs in the use of the city's streets.

The city's charter gives it no power whatever over the control of liquor generally, or specifically to control its use. The State Liquor Control Act which we refer to presently permits the city to charge license fees for making and selling liquor, and gives it concurrent authority to provide ''for the regulation and control of the sale'' of liquor. Its concurrent authority is limited to the sale only. The ordinance does not regulate or control the sale of liquor. The city has no statutory or charter power to prohibit or to regulate the use, possession or transportation of liquor. Furthermore, its attempted regulation violates rights guaranteed by the Constitution.

However, the city asserts the ordinance is not one to regulate and control liquor but comes within its power to regulate the use of its

streets by taxicabs, and to prohibit the transportation of "merchandise" by taxicabs. Such is the only purpose of the ordinance asserted by the city. We will dispose of this contention first.

[461] It has long been the settled rule that municipalities in the exercise of the power to regulate the use of their streets may enact regulations for the government of motor vehicles within their boundaries so long as such regulations do not conflict with state laws. A taxicab is a public vehicle for hire which derives its income from the use of the public streets. It is subject to a license tax and to proper regulation by municipal ordinances.

The city points out that taxicabs are intended primarily as passenger carriers. Therefore, it contends it may lawfully restrain taxicabs from transporting "merchandise." Perhaps it may, but that question is not for decision here because the ordinance does not by its terms prohibit the transportation of merchandise. Merchandise has been defined as whatever is usually bought and sold in trade or market, or by merchants. The phrase "goods, wares, and merchandise" is a familiar one. The ordinance does not forbid the possession or transportation of merchandise generally or the drinking of liquid merchandise—only intoxicating beverages.

The city argues the ordinance is incidental to its express powers, so it is authorized under what is termed the welfare clause, that is Section XX, in that it is a regulation of the use of its streets by taxicabs.

In my opinion the ordinance does not regulate the use of the streets by taxicabs. The only possible connection it has with using the streets is the prohibition against a taxicab driver, owner or employee carrying with him or transporting liquor in his taxicab. This does not regulate the transportation of merchandise generally or to the business of hauling liquor, if such therebe. It is not a traffic regulation governing the use of the streets and incident to the business of operating taxicabs. In prohibiting the use of liquor it imposes only a rule governing the personal conduct of those who happen to be engaged in such a business, conduct not necessarily inherent in such business. The prohibitory measures are not even limited in their application to the use of the streets. They apply to the office or place of business of the owner as well. The owner while on duty sitting at his desk in his office may not drink. Nor may the mechanic in the taxicab garage. The ordinance does not pretend to forbid the operation of a taxicab by an intoxicated driver. A state law makes it an offense for any person to operate a motor vehicle while in an intoxicated condition. Elsewhere in the taxicab ordinance, the city has taken steps to insure the sobriety of taxicab drivers. Before the city will issue a license to a taxicab driver to drive a taxicab it requires he be examined by the city physician for "evidence of narcotic and alcoholic addiction." It also requires that he be "not addicted to the use of

intoxicating liquors and drugs" as a requisite to obtaining a license as a taxicab driver.

In a very early case Judge McGirk, the first Judge and the original Chief Justice of this Court, considered the authority of St. Louis to forbid the operation of any licensed wagon, cart or dray by or in charge of a slave. This regulation was enacted under the city's authority to tax and regulate such vehicles. The court said: "We suppose ordinary regulations of a dray would be, to regulate the speed, the position of a dray, when standing or loading, with a view to the ease and comfort of other drays, carriages and persons that might be passing and repassing. In such cases, there might also be other things respecting drays and drivers, which could, under the direct power given, be regulated. It is believed to be a safe rule of construing powers, to confine resulting powers to those things, and those only, which are obviously necessary, proper, fit and act to accomplish the express or principal power. When that rule is applied to this case, we must ask ourselves the question, can drays be so regulated as to accomplish the use for which they are intended, without excluding slaves from being drivers. We think this question must be considered in the affirmative. We are of opinion that this ordinance, under the name of regulating drays, regulates slave labor, which is beyond the grant in the charter." The Mayor of St. Louis et al. v. Hempstead, 4 Mo. 242.

The city's contention that it has the power to enact such a regulation as incident to its express powers to control taxicabs in the use of the streets can not be sustained. The ordinance covers a subject that is not implicit [462] in or incident to such express powers. The city cannot draw the power to prohibit the use of liquor from the welfare clause.

"The general welfare clause of the charter of a city which follows a long list of powers like the one here, should not be construed so as to enlarge the powers of the city further than is necessary to carry into effect the specific grants of power." City of St. Louis v. King, 226 Mo. 334, 126 S. W. 495.

The city is not expressly authorized, either by Section 6609 or by any other statute, to prohibit the possession, carrying, transportation or drinking of intoxicating beverages. The State Liquor Control Act covers both possession and transportation. Section 4884 forbids the possession of liquor only when the package is not properly labeled and sealed. Section 4932 forbids the transportation of liquor by automobile or other conveyance only when such liquor had not been inspected, labeled, and tax paid. Section 4904 permits municipalities to enact ordinances for the regulation and control of the *sale* of liquor, but any such regulation may not be inconsistent with the state law. However, authority to regulate the sale does not permit a municipality to prohibit generally the possession, transportation, or

drinking of liquor where such is authorized by the state. It was held in City of Jacksonville v. C. & A. R. Co., 274 Ill. 152, 113 N. E. 91, that the power to regulate the sale of intoxicating liquor does not confer authority to prohibit transportation, particularly for purposes recognized as legal by state laws. See 30 Am. Jur. Intoxicating Liquors, § 227.

The ordinance is invalid also for the reason it violates the natural right of liberty guaranteed to all citizens. A citizen has the natural right to possess, carry, and use liquor. Of course this natural right is not absolute, and may be restricted for the benefit of society generally. The state under its police power may make reasonable regulations governing intoxicating liquor. But a city may not prohibit a citizen the use of liquor unless the state has authorized it to do so.

"While the city has the undoubted right, under its charter, to regulate the use of its streets, it has no right to do so in a way that interferes with the personal liberty of the citizen as guaranteed to him by our Constitution and laws." City of St. Louis v. Gloner, 210 Mo. 502, 109 S. W. 30. And see City of St. Louis v. Roche, 128 Mo. 541, 31 S. W. 915; Ex Parte Smith, 135 Mo. 223, 36 S. W. 628. "And while cities have great powers vested in them to pass ordinances which may be deemed expedient for the good government of the city and for the preservation of its peace and good order, there are certain fixed restrictions upon the exercise of this power, and against the enactment of oppressive ordinances under the guise of protecting the general public in their morals, peace and order. *Municipalities are not guardians of morals, as such, and therefore may not unduly interfere with the liberty of the citizens by ordinances forbidding acts not unlawful or wrongful per se.*" (Emphasis mine.) City of Carthage v. Block, 139 Mo. App. 386, 123 S. W. 483.

But even if the state had delegated to the City of Springfield its police power to regulate the use of liquor, the ordinance would still be invalid. The ordinance must be considered in its entirety. It sweepingly prohibits everyone connected with the taxicab business the use of liquor. It regulates the use of liquor by customers. The ordinance does not attempt to protect taxicab passengers or the public using the streets by forbidding the operation of a taxicab by an intoxicated driver. As we have pointed out, addiction to liquor by taxicab drivers has been dealt with by another section of the whole ordinance, and drunken driving generally by state statutes. We find apposite in this case what was stated by the Illinois Supreme Court in City of Jacksonville v. C. & A. R. Co., 274 Ill. 152, 113 N. E. 91, supra: "There is no statute which prohibits the drinking of intoxicating liquor, though the times, places and circumstances of such drinking may be and have been regulated by law." Citing Tarantina v. L. & N. R. Co., 254 Ill. 624, 98 N. E. 999.

The "times, places and the circumstances" where the regulation in this case applies [463] are too general and too inclusive to be reasonable. As an example, we find where the state has enacted such regulations it has been specific. Section 4388 R. S. 1939, RSA provides: "Every person who, whilst actually employed in driving any stage, coach, wagon, omnibus, hack or other vehicle, shall be intoxicated . . . shall be deemed guilty of a misdemeanor . . . " Section 4389 provides a stiffer penalty for intoxication against every person while "actually employed in discharging the duties of "a pilot or engineer of any steamboat, or of an engineer on any railroad engine or of a motorman on an electric car. And Section 8401 states: "No person shall operate a motor vehicle while in an intoxicated condition." Thus the ordinance in question would be unconstitutional as its broad scope is an unreasonable invasion of a natural right, and not required for the protection of the public.

 I find the ordinance is unconstitutional for still another reason. Assuming for the purpose of argument only that the city has the authority to enact this ordinance as a regulation of the use of its streets, and that it invades no individual's constitutional rights, still it is unreasonable and arbitrary as class legislation. It does not apply to all drivers and to all owners of motor vehicles. Nor does it apply to all drivers and to all owners of all motor vehicles for hire, or even to all those which are engaged in hauling passengers for hire. It singles out taxicab owners, their employees, and drivers. It does not include motor busses.

"The state may not arbitrarily subject some to certain restrictions or requirements, leaving others, fairly and reasonably falling in the same class, free from the operation of such restrictions and requirements." Blind v. Brockman (Mo.) 12 S. W. (2d) 742. And see State v. Julow, 129 Mo. 163, 31 S. W. 781. So in this case the city has not taken a natural class of persons, namely operators and owners of motor vehicles, or to classify even further, operators and owners of motor vehicles carrying passengers for hire. But it has decreed that within such a limited class, only taxicab drivers, owners, and employees may not use liquor.

The question of classification is a practical one. Not every person must be included under an ordinance. "It is not enough to invalidate the law that others may do the same thing and go unpunished, *if, as a matter of fact, it is found that the danger is characteristic of the class named.*" (Emphasis mine.) Patsone v. Pennsylvania, 232 U. S. 138. The legislature "may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses." Central Lumber Co. v. South Dakota, 226 U. S. 157. "The legislative authorities may classify with reference to an evil to be prevented, and the legislation designed to prevent one evil is not void

because it does not prevent another." Ballentine v. Nester, 350 Mo. 58, 164 S. W. (2d) 378.

But in this case the city has decreed that of all the persons owning and operating motor vehicles on the streets, the use of liquor is an evil which is characteristic only of those in the taxicab business. It is true, we have held that in making traffic regulations there is a reasonable basis for the classification of taxicabs as distinguished from other motor vehicles, so that an ordinance for the regulation of traffic applicable only to taxicabs is not a special law. Jones v. Walker, 357 Mo. 476, 209 S. W. (2d) 147. But the regulation we are considering is clearly not a traffic regulation, the evil aimed at is not even limited to the use of the streets.

The classification by the ordinance is plainly unreasonable and arbitrary on its face. The ordinance would be unconstitutional for this reason even if it could be held otherwise valid.

I dispute the ruling of the court that the City of Springfield has the authority to enact such an ordinance, and that the ordinance is valid. I am convinced the ordinance is void, so the judgment against appellant should be reversed.

Accordingly, I *dissent*.

HYDE, J. (concurring).—I concur in the opinion of Ellison, J., herein. I believe that this case can properly **[464]** be decided on the first sentence of § 554, of the ordinance regulating taxicabs, and in fact, only the part of that sentence which prohibits a taxi operator from possessing or transporting intoxicating liquor in his taxicab while on duty. That is the reasonable construction of this sentence (considered as a whole) in my opinion; and I think this sentence is severable from the rest of the section.

I think it is reasonable to construe the purpose of at least the first sentence of this ordinance as public safety. It seeks to accomplish this purpose by requiring the business of operating taxicabs to be kept separate from the liquor traffic. In this I think it is entirely consistent with the State Liquor Control Act which does separate the liquor business from all other businesses except those therein authorized. [See §§ 4880, 4899, and 4901.] I think at least that part of the ordinance is reasonable for such purpose; but I express no opinion about the other provisions of §554, because I think they are severable and need not be considered in ruling on the validity of the provisions of the first sentences.

It is stated in both opinions that there is a reasonable basis for classification of taxicabs separately from other motor vehicles, as we held in Jones v. Walker, 357 Mo. 476, 209 S. W. (2d) 147. I think that is a sound view because the vital importance of proper operation of taxicabs to the safety of all the people on our public streets is too obvious to require any argument. It is impossible to

regulate the operation of taxicabs without regulating to some extent the conduct of those who operate them. The possession and transportation of intoxicating liquor by drivers of taxicabs while they are in service on the streets would at least tend to combine the effects of alcohol and gasoline in a way that would not promote the public welfare. Viewed only from the standpoint of public safety, without regard to the question of public morals, I think it is reasonable to prohibit the possession or transportation of intoxicating liquor in taxicabs in operation as such by their drivers on the streets of the city. In my opinion that is the decisive issue in this case.